## HARRELSON v. SARVIS.

1. RECOVERY OF REAL PROPERTY—PROOF BY PLAINTIFF.—A plaintiff can recover land from one in possession only upon the strength of his own title, but a good title, capable of being actively asserted, may become fixed in plaintiff by the statutory bar of defendant's claim.

2. DEEDS—LIFE ESTATE.—A deed of conveyance to a grantee alone, without words of inheritance, conveys to him only a life estate.

3. TITLE BY ADVERSE CLAIM.—Where, in action to recover possession of land, commenced in 1891, plaintiff proves possession by himself and his ancestor under claim of valid title from 1878 to 1890, in which latter year the defendant took possession, there is enough to give to plaintiff a good title, if his possession covered the land in dispute, and was open, notorious, and adverse; and whether so or not, should have been submitted to the jury.

4. REVERTER—CONVEYANCE OF SHARES—SEVERAL DEED.—Where a deed conveys a life estate with no remainder over, there is a reverter to the heirs of grantor after the grantee's death; and two of these heirs having executed a quit claim deed, after the termination of the life estate, to plaintiff, who held a conveyance in fee from this life tenant, these heirs thereby

conveyed their interests to plaintiff, who, to that extent was entitled to recover. This quit claim deed was not invalidated by its execution by only two, when it purported to be a release severally of the interests of three.

5. RECOVERY OF INTEREST IN REAL PROPERTY.—Plaintiff might recover a part under a complaint which demanded the whole, and as owner of a share, he might recover from defendants, without proof of ouster, as defendants made no claim to any interest as tenants in common.

Before WALLACE, J., Horry, June, 1892.

This was an action by N. O. Harrelson against D. J. Sarvis and J. M. Sarvis, commenced January 10, 1891. It was an action for the recovery of a tract of land. As a part of plaintiff's chain of title, he introduced deed from J. F. Moody to D. J. Blanton, conveying "to the said D. J. Blanton all that plantation," &c., with no *habendum* clause. Also, deed with warranty only against the grantors and those claiming under them, which commenced as follows: "Know all men by these presents, that we, Evaline Moody, widow of the late J. T. Moody, James A. Moody, and Elizabeth S. Bryan, the children and heirs at law of the said J. T. Moody, in the State aforesaid, in consideration of the sum of one dollar to each of us paid by Nancy Orilla Harrelson, of Horry County, in the State aforesaid, have granted, bargained, sold, and released, and by these presents do grant, bargain, sell, and release, unto the said Nancy Orilla Harrelson, and her heirs and assigns forever, all our right, title, and interest," &c.

There was a non-suit, and plantiff appealed.

*Mr. Ferd. D. Bryant,* for appellant.

*Mr. Robert B. Scarborough,* contra.

March 31, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action to recover a tract of land (300 acres) in the county of Horry. The answer of the defendants did not state under what title they claimed, but put in a general denial, alleging adverse possession by themselves and their ancestors more than twenty years, under

claim of title, and interposing the statute of limitations.   After
the plaintiff closed her testimony, the judge granted a non-suit
in general terms, because "the plaintiff had failed to make out
her chain of title to the premises in question."   That makes it
necessary to consider all the testimony, in order to find out
whether any error was committed.   No "Case" was regularly
"stated;" but the record shows that the plaintiff offered in
evidence the following "abstract of title:"

1. Certified copy of plat of land surveyed for John Sarvis,
September 25, 1792 (eleven hundred acres).

2. Fee simple deed, Abram King to Benjamin Dorman, Jan-
uary 28th, 1822, for one hundred acres of land, being part of a
tract granted to John Sarvis, sr., March 4, 1793, covering the
land in question.

3. Fee simple deed, Benjamin Dorman to Thomas Dorman,
dated February 20, 1843, for same land as that described in No.
"2," above.

4. Fee simple deed, Thomas Dorman and wife to J. T. Moody,
December 2, 1859, for three hundred acres, covering the land
described in Nos. 2 and 3 above, being part of land granted to
John Sarvis, sr., March 4, 1793.

5. Deed J. T. Moody to D. J. Blanton, July 27, 1861, for
same land as that described in No. 4 above.   See Appendix
A—deed without the word "heirs."

6. Deed purporting in its premises to be from the widow and
two children of J. T. Moody, deceased, to plaintiff for their
interest in the land described in No. 5 above, but executed by
the two children only, for a copy of which, except description
of land, December 30, 1890, see Appendix B.

7. Deed Isaac G. Long, probate judge Horry County, to
heirs at law of D. J. Blanton, of whom plaintiff is one, based
upon the partition proceedings of the 300 acre tract of land of
the estate of D. J. Blanton, described in Nos. 4 and 5, this
paper being the final order in partition of said estate, and in
which the land in question is set apart to the plaintiff in fee
simple, February 3d, 1878.   See Appendix C.

8. Submission to, and award of, arbitrators in a controversy
between Celia Harrelson, widow, and heirs at law of D. J.

Blanton and W. P. Pridgeon, as to the location of a certain line of the land in question, in which the line as now claimed was established, June 10, 1882.

In addition to the foregoing, the plaintiff proved her actual possession of the premises for more than twelve years next prior to the commencement of the action under title, and the actual possession of D. J. Blanton, her ancestor, and his heirs under deed of J. T. Moody, from 1861 down to the time of her entry under proceedings in partition in 1878; also, the actual possession of Benjamin Dorman and Thomas Dorman during the terms indicated by their deeds respectively, from 1822 to 1859, and the possession and use by Moody during the term indicated by his deed, and the trespass and ouster as alleged in the complaint, defining the scene of trespass and the extent of her claim by reference to the plat attached. The plaintiff also proved the death of D. J. Blanton about the close of the Confederate war, the loss or displacement of the records of partition in the Probate Court, and also loss or displacement of records of Circuit Court in proceedings to confirm said partition. Also, actual personal notice to the defendant not to enter upon the land in question.

The plaintiff then closed, and the defendants moved for a non-suit on the ground that the plaintiff had not shown perfect title in three particulars, to wit: (1) In that the deed from J. T. Moody to plaintiff's father, D. J. Blanton, under whom she claims, contains no words of inheritance, and vested in him only a life estate, and plaintiff or any one of his heirs at law took nothing by descent. (2) That if that objection can not be sustained, then in that there had been no proof of the recitals in the deed of the probate judge (No. 7) as to decree of Probate Court and other proceedings therein, and no proof of any proceedings in the Circuit Court to confirm the Probate Court proceedings, and that the probate judge's deed is governed by the same rule, as to proof, as sheriff's deeds. (3) In that plaintiff's complaint alleges that she has title to the entire tract of land in question, whereas the title of James A. Moody and Lessie Bryan (No. 6) to plaintiff, in its premises purporting to be from three heirs at law of J. T. Moody, was, in fact, exe-

3—39

cuted by two only; and in so far as it affects plaintiff's claim, vests in her only a two-thirds interest, if anything, and under her pleadings she can not recover.

The presiding judge held that either of the three grounds urged above on motion for non-suit would be fatal to plaintiff's recovery, and granted an order of non-suit generally "for failure of proof of perfect title as was incumbent upon her under the pleadings." The plaintiff appealed, contesting each of the grounds relied upon to support the non-suit; but as they are long and cover substantially the same points as above indicated, and are printed in the record, they need not be set out here.

It is certainly true, that in an action for the recovery of land, the plaintiff must recover, if at all, upon the strength of his own title and not the weakness of that of his adversary. But it is not necessary that, under all circumstances, there should be an unbroken chain of paper title back to the *grant*. The statute of limitations has a double aspect; besides affording a shield of defence, it may, under certain circumstances, give title capable of being asserted actively. As was said by Judge Earle in *Young* v. *Watson*, 1 McMull., 449, cited with approbation in the case of *Geiger* v. *Kaigler*, 15 S. C., 273: "A plaintiff can only make out a perfect title by producing a grant, or by proving such a possession as will give title in himself, or in some one from whom he derives title." The same view is taken in 13 Am. & Eng. Enc. L., 643: "Where property, whether real or personal, is held adversely, the statute operates on the title, and when the bar is complete, the title of the original owner is defeated, and the adverse possessor has the complete title."

Now, did the plaintiff have legal title to the premises in question or any part of them? Let us first consider the effect of the deed (No. 5) from J. T. Moody to D. J. Blanton, of February 27, 1861. If that deed had conveyed to the grantee an inheritable interest, there can be no doubt that the plaintiff would have had paper title to the whole land, for she has conveyances from the other heirs at law of her father, D. J. Blanton. That deed was evidently written by an illiterate person, who probably did not know

the meaning of the word "heirs," or the necessity of putting it in the deed. I have a very strong impression that the parties intended the deed to convey the fee simple, and words of inheritance were omitted from sheer ignorance; but the rule requiring the insertion of the word "heirs" in a deed, has been so long established, that we will not now undertake to review the numerous cases cited by the learned counsel for plaintiff. But if we take it for granted, that D. J. Blanton took only a life estate in the property, and strike out all reference to the partition proceedings, and the deed of Long, probate judge, conveying the premises to the plaintiff and her two brothers, still the fact remains that the plaintiff (in 1878) went into possession "of the premises" under those proceedings, then supposed to be valid, and held such possession up to the time this action was brought, a longer period (as it was admitted that the land had been granted) than was necessary to complete the bar of the statute; and we think it should have been left to the jury to determine the precise "premises" of which she thus had possession, and whether that possession was open, notorious and adverse. See 9 S. C., 265; 26 *Id.*, 219 and 608; 3 Strob., 465 and 474; 1 McMull., 450.

But again. In the view that we have just taken, that only a life estate was conveyed to D. J. Blanton by the deed of Moody, at the death of Blanton the title *reverted* to the heirs of Moody. *Two* of these heirs, Lessie Bryan and J. A. Moody, executed a quit claim deed to the plaintiff of their respective interests as such heirs. See Exhibit B.

Why did not that deed convey to the plaintiff legal paper title in the premises to the extent of these shares, whatever they may be, much or little? But it is insisted, that of the three, whose names were mentioned in the body of the deed as "the heirs of Moody," Mrs. Eveline Moody, the widow, did not execute the paper; and, therefore, the deed of the other *two*, who did sign, seal and deliver the paper, is absolutely null and void, under the authority of *Robertson* v. *Evans*, 3 S. C., 330, and *Arthur* v. *Anderson*, 9 S. C., 234. We can not concur in this view. As we think, there is no analogy between this case and

those relied on. The point of the case of *Robertson* was as to the admission of parol testimony, and the case of *Anderson* was where a deed upon its face showed that it was intended to be jointly executed, &c. Now, this is no such case; there is no joint covenant, but a quit claim, in giving which the parties acted severally, "in consideration of the sum of one dollar to each of us paid," have granted, &c. There must have been some good reason why Mrs. Mooody did not sign the paper. She makes no claim here. But be that as it may, we think that each of those who signed, conveyed his or her individual interest in the land, whatever it might be; and to that extent, if no more, the plaintiff has legal title to the premises.

But the general objection is made, that the plaintiff can not recover, because of "the state of the pleadings." We are not quite sure that we understand clearly what is meant. If it is intended to make the point that the plaintiff can not recover, because she claimed *too much*—that she claimed *the whole*, and has only shown *title to a part*—there is no force in the point. A non-suit is only proper when there is a total failure of proof. If it is meant, that being a tenant in common, the plaintiff cannot sue at law for her individual share of the land, there is nothing whatever in the objection. It is true that one tenant in common can not sue another at law, unless there is an ouster. But it does not appear that the defendants here are tenants in common with the plaintiff. Indeed, it does not appear under what right they claim to enter. As far as the record shows, they are strangers to the plaintiff, and if she is a tenant in common with other persons, who are not on the record, that furnishes no just objection to her action. "Tenants in common may sever, and any one of them may bring ejectment for his share, and upon proof recover it, or he may bring ejectment for the whole, and upon proof recover his share. Indulgence is extended in allowing tenants in common to join in an action against a stranger, but they are not required to do so. *Dorn* v. *Beasley* (Court of Errors), 6 Rich. Eq., 408; *Bannister* v. *Bull*, 14 S. C., 229; *Reams* v. *Spann*, 28 S. C., 530.

The judgment of this court is, that the judgment of the Cir-

cuit Court be set aside, and the cause remanded to the Circuit Court for a new trial.