SCATES v. HENDERSON.

1. LOCATION—ERRONEOUS DESCRIPTION—NONSUIT.—An alleged erroneous boundary of a parcel of land will be rejected as surplusage where enough remains to identify the land with certainty; and if a description of the land

is, in the main, applicable to two parcels, an issue of fact as to location is raised which must be submitted to the jury, to be determined by them in the light of the surrounding circumstances. It should not be passed upon under motion for nonsuit.

2. TITLE TO LAND—COMMON SOURCE—NONSUIT.—Error will not be declared in a refusal to grant a nonsuit for failure of plaintiffs to prove title to the land sued for, where plaintiffs proved title from A, and defendants afterwards proved that they also claimed under A.

3. IBID.—MORTGAGEE IN POSSESSION.—A mortgagee does not establish title in himself from the mortgagor by proving that he was mortgagee in possession after condition broken.

4. PRIVILEGED COMMUNICATIONS—WAIVER.—Objection to testimony of privileged communications is waived by submitting it to the witness to say whether the communications were privileged.

Before ALDRICH, J., Richland, July, 1894.

Action by Mathew Scates and others, heirs at law of Mamie Scates, against Willie Henderson, for the recovery of a city lot, commenced February 9, 1894.

*Mr. John P. Thomas, jr.*, for appellant.

*Messrs. Alston & Patton*, contra.

September 7, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY.  This is an action for the recovery of a certain lot of land in the city of Columbia.  The complaint alleged that Mamie Scates was the owner of the land at the time of her death, and that, upon her death, the plaintiffs became the owners thereof by reason of being her heirs at law. The complaint also alleged that the defendant was in possession, and that the title by which the plaintiffs and defendant claimed the land had a common source, to wit: the said Mamie Scates.  The answer of the defendant admitted possession, but denied the other allegations of the complaint, including the allegation that plaintiffs and defendant claimed from a common source.

The following statement appears in the "Case:" "Upon the close of plaintiffs' testimony, defendant's attorneys moved for a nonsuit, upon the ground that plaintiffs had failed to make

out their title to the premises in suit, either by tracing the same to a grant from the State or by showing possession of the premises by those under whom they claimed for such a time as would be presumption of a grant, and that their testimony showed no evidence to support the allegation of the complaint that plaintiffs and defendant claimed title from a common source. His honor ruled that plaintiffs had not traced their title back to a grant from the State, and had failed to show such facts as would in law presume a grant from the State, having failed to show that the land conveyed by the deed of Barnwell, master, to John Agnew, was the land claimed by them, thus failing to trace the title set up by them back to those who had held the same for twenty years or more; but he held, upon the testimony submitted by the plaintiffs and the pleading, that there was evidence sufficient to submit to the jury to support the allegation of the complaint that plaintiffs and defendant claimed from a common source of title, and he, therefore, overruled the motion for a nonsuit. After the motion for nonsuit was refused, the trial of the cause proceeded, and the evidence of the defendant disclosed no claim of title, except through Mamie Scates, through whom the plaintiffs also claimed, &c.

The appellants' first and second exceptions are as follows: "I. Because his honor overruled defendant's motion for a nonsuit, and thereby committed error of law in so doing. II. Because his honor erred in ruling that there was any evidence upon plaintiffs' testimony and the pleadings to support the allegation of the complaint that plaintiffs and defendant claimed from a common source of title."

The plaintiffs offered in evidence: 1. *Deed* of John Agnew to Mamie Scates, dated 13th May, 1884, conveying three-fourths of an acre, and bounded as follows: "On the north by Plain street, on the east by lot of John Agnew, south and west by lands now or formerly of Killian & Fry, the same being a portion of an acre of land formerly belonging to Israel Smith, and conveyed to me by N. B. Barnwell, master, in proceeding in foreclosure, bearing date 4th November, 1880, and recorded in the office of the register of mesne conveyances," &c. 2. *Deed*

of Barnwell, master, to John Agnew, dated 4th November, 1880 (which recites the decree in the case of John Agnew against Israel Smith), conveying three-fourths of an acre, bounded as follows: "North by Plain street, east by lot in possession of Charles H. Coleman, south and west by lands of Killian & Fry." 3. *Deed* of Barnwell, master, dated 4th November, 1880, conveying "all that lot of land bounded north by Plain street, east by Pulaski street, south by lot of Killian & Fry, and west by lot formerly of Israel Smith." 4. *Judgment roll* in the case of John Agnew, plaintiff, *v.* Israel Smith and Charles H. Coleman, defendants. This was a proceeding to foreclose a mortgage covering the one acre of land mentioned in the deed next below set forth, to which proceeding Charles H. Coleman, being in possession of a portion of said premises, under an alleged contract to purchase the same, subsequent to the date of said mortgage, was duly made a party, and appeared. After the proceedings usual in such cases, a decree was made, 12th July, 1879, ordering a sale of the following described premises: "(1) All that piece, parcel or tract of land, containing three-fourths of an acre, bounded north by Plain street, east by lot in possession of Charles H. Coleman, south and west by lands of Killian & Fry. (2) All that lot of land bounded north by Plain street, east by Pulaski, south by lands of Killian & Fry, and west by lot formerly of Israel Smith." 5. *Deed* of Killian & Fry to Israel Smith, dated 22d February, 1872, conveying "all that lot, piece or parcel of land * * * bounded on the north by Plain street, on the east by Pulaski street, and fronting on each side of said street 208 feet and 7 inches, more or less, on the south and west by Killian & Fry, containing one acre, more or less."

Below will be found a diagram showing the different parcels of land described in the testimony of plaintiff's witnesses:

**N.**

**P L A I N.**

It appears that in the foreclosure proceedings mentioned above, the decree provided that the lot containing one acre should be divided and sold in two parcels. This was done, and both bought by John Agnew, the mortgagee. One of these lots, containing one-quarter of an acre, and represented on the diagram as lot No. 4, was correctly described in the master's deed as hereinbefore mentioned. The other lot, containing three-quarters of an acre, is described in the master's deed as hereinbefore mentioned, and gives the eastern boundary as a lot of Charles H. Coleman. A portion of the land in the said lot of three-quarters of an acre was possessed by Charles H. Coleman at the time the master made the said deed, but did not form the eastern boundary of the lot mentioned in the deed. There was testimony to the effect that the land in dispute was in the possession of Killian & Fry from 1851 until 1872, when

they conveyed to Israel Smith, who mortgaged to John Agnew, and remained in possession until 1880, when the land was purchased by said Agnew, under the judgment of foreclosure of said mortgage; that John Agnew was in possession from 1880 until 1884, when he sold to Mamie Scates (sometimes called Swygert) in 1884, and who retained possession until the time of her death.

The first question to be considered in a case of this kind is: If the boundary alleged to be erroneously set forth in the description of the property is rejected, does enough remain to render certain the *locus in quo?* When this can be done, the law permits the rejection of such erroneous boundary. In the case of *Bratton* v. *Clawson*, 3 Strob., 129, the court says: "On this subject the rule laid down in Shepperd's Touchstone is, that when there is, in the first place, a sufficient certainty and demonstration and an additional term of description which fails in point of accuracy, it shall be rejected as surplusage." In this case the description of the lot would be certain if the words describing the eastern boundary are rejected as surplusage. When we have three of the boundaries of a lot, the fourth is ascertained, ordinarily, by drawing a straight line from the *termini* of two of the boundaries so as to enclose the property covered by the three boundaries. 2 Am. & Eng. Enc. L., 501.

When, as in this case, words descriptive of the *locus in quo* are, in the main, applicable to either of the two parcels of land and issue is joined as to the location, this raises a question of facts to be determined by the jury. To correct an error of this kind does not require that resort should be had to a Court of Equity. The rule for determining the location of the land is clearly expressed in 2 Am. & Eng. Enc. L., 497, as follows: "In the endeavor to ascertain the limits or boundary of the land which the grantor intended to convey, the courts will ascertain, if possible, all the circumstances surrounding and connected with the parties and the land at the time of the conveyance, since parties are presumed to refer to the condition of the land at that time, and the meaning of the terms used in the description can only be ascertained by a knowledge of the

relative positions of themselves and of the land." Possession was taken under the master's deed of the property in dispute, and there is no testimony that any of the parties through whom the plaintiffs claim ever had any interest in the other lot which answers to the description in the deed, except Killian & Fry. Every surrounding circumstance in this case shows that the description of the eastern boundary was a mistake, and that the presiding judge was right in admitting such testimony.

There is another reason why the nonsuit was properly refused. The "Case" contains the statement that the evidence of the defendant disclosed no claim of title except through Mamie Scates, through whom the plaintiff also claimed. The evidence of the defendant having shown that the parties claimed title from a common source, he can not now insist upon his objection that there was no such testimony. *Martin* v. *Ranlett*, 5 Rich., 545; *Thomas & Ashby* v. *Jeter & Abney*, 1 Hill, 382. The respondents' attorneys contend that even if the master's deed did not convey the land in dispute, they can nevertheless maintain their action because their rights are derived from Agnew, who was a mortgagee in possession after condition broken. It must have escaped the notice of counsel for respondents, that section 1, page 536, of the General Satutes (1872), was amended in 1879 by striking out from the statute relating to the foreclosure of mortgage the words, "and said provisions shall not apply when the mortgagor shall be out of possession." These exceptions are overruled.

The third exception is as follows: III. "Because his honor erred in admitting, against defendant's objection, the testimony of the witness, A. W. Ray, as to the declaration of the defendant alleged to have been made to him." This testimony was objected to on the ground that it was a privileged communication. The defendant's attorney submitted to Mr. Ray's discretion the question whether it was a privileged communication. He thereby waived the right of such objection to the testimony. This exception is overruled.

The fourth exception is as follows: IV. "Because his honor erred in admitting, against the defendant's objection, the deeds

of Barnwell, master, to Agnew, and the foreclosure proceedings in the case of Agnew *v.* Smith, when it was shown that the land described in said deeds and in the decree of sale of said case, were not the lands, or any part of the lands, in dispute.'' This exception is disposed of by what is said in considering the first and second exceptions, and is, therefore, overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.