8169

DUPUY v. WILLIAMS.

1. TITLE TO REAL PROPERTY—ISSUES.—Where one proves paper title to land he is presumed to be in possession, and where the proof is sufficient as to the identity of the land passing under such title, the issue of title should be sent to the jury.

2. IBID.—VERDICT.—But where a plaintiff showing paper title shows that he has been in possession for ten years, and those through whom he claims have been in possession for twenty years, and the defendant makes no adverse showing, the Court should direct a verdict for the plaintiff.

3. IBID.—SPECIFIC PERFORMANCE—PRINCIPAL AND AGENT.—One purchasing a tract of land from an agent who has authority to sell, on condition the offer is submitted to and accepted by his principal, paying the purchase price to the agent, being put in possession by the agent and making improvements upon information from the agent that the offer is accepted, cannot maintain specific performance against the

principal, if in fact the offer was not accepted, the purchase money having been retained by the agent.

Mr. Chief Justice Gary *thinks there was sufficient evidence to carry to the jury the issue whether the agent did not have authority to make the sale.* •

Before DeVore, J., Barnwell, July term, 1911. Affirmed.

Action by C. E. R. Dupuy against H. A. Williams, on the following complaint:

"The complaint of the above named plaintiff respectfully shows to the Court:

1. "That the above named plaintiff, C. E. R. Dupuy, is the owner in fee and entitled to possession of the following described tract of land, to wit: 'All that tract or parcel of land lying and being situate in the county of Barnwell, State of South Carolina, containing one hundred and seventy-eight (178) acres, more or less, bounded north by lands of S. L. Peacock, east by lands of F. J. Sanders, south and west by lands of T. H. Willingham.'

2. "That the above named defendant, Henry A. Williams, is in possession of the above described tract of land, wrongfully withholding possession from the above named plaintiff to plaintiff's damage five hundred dollars.

"Wherefore, plaintiff demands judgment:

1. "For possession of the above described tract of land.

2. "And for five hundred dollars, the plaintiff's damages by the defendant withholding possession of said lands from the plaintiff, and for such other and further relief as the plaintiff may be entitled to and as to the Court may seem just and proper."

"The defendant, answering the complaint of above named plaintiff, respectfully shows:

"For a first defense:

1. "That the defendant denies each and every allegation in the said complaint contained.

"For a second defense:

1. "That the defendant purchased the property described in the complaint from one C. Dupuy, for the sum of three hundred ($300) dollars, under an agreement with Bates & Simms, his agents and attorneys, and paid the said amount to said agents, taking their receipt therefor.

2. "That soon after the 21st day of November, 1904, the defendant entered into possession of the premises, by and with the written consent of the said Bates & Simms, agents and attorneys, as aforesaid, and immediately began to repair the buildings on said place, which were in a greatly dilapidated condition, and spent large sums of money for such repairs and otherwise improving the property, and has remained in continuous possession of said premises since that time, and is now in such possession.

3. "That several months after defendant had paid for the said premises, as aforesaid, and after he had taken possession of the property and made repairs on the buildings, cleared land and made other improvements in his efforts to make the property desirable as a home for himself and to increase the value thereof, he was informed by Bates & Simms that the plaintiffs refused to execute and deliver to him titles to the property, as contracted for by the defendant with the said agent and attorneys of the plaintiff, although the said contract and sale to this defendant had been expressly ratified and confirmed by the said plaintiff.

"Wherefore, the defendant prays that the complaint be dismissed, and that the plaintiff be required to specifically perform his contract with this defendant, by executing and delivering to this defendant title to the property in dispute, and for costs."

From verdict directed for plaintiff defendant appeals, on the following exceptions:

1. "That it was error to refuse the motion for nonsuit when there was no testimony tending to show a grant to

the plaintiff, or to any one with whom she connected herself, and no testimony tending to show such possession twenty years in her, or in some one with whom she connected herself, as would authorize the presumption of a grant, or she must show that she and the defendant claim from a common source of title and that she has the better title of the two, and there was no testimony to that effect.

2. "That it was error to hold that the mere presumption of possession arising from the holding of a paper title to plaintiff, or to some one with whom she connected herself, if such adverse holding as would ripen into title under the statute of limitations; whereas, he should have held that the plaintiff, or some one under whom she claims, must have entered into possession of the premises under claim of title, and continued to occupy and possess the premises included in such instrument under such claim for ten years.

3. "That it was error to hold that the sheriff's deed showed title in Ingram; whereas, he should have held that the plaintiff must also show title in the judgment debtor, J. M. Harley.

4. "That the presiding Judge erred in holding that the Harleys had title to the land in dispute in 1889, and from that date to date of master's deed to the plaintiffs, in 1900, made the ten years' possession; whereas, he should have held that there was no proof that the Harleys were in possession of the land at the time of the execution of the mortgage to Vorhees, or that the Harleys were in possession of the land from that time (1889) until the master's deed, in 1900, and that no title by adverse possession could be acquired except by the actual entry into possession and the continued occupation and possession of the premises for a period of ten years, and that title cannot be proven by proof of deed without proof of title in grantor, and should have granted the nonsuit.

5. "That the presiding Judge erred in directing a verdict for the plaintiff, thereby holding that plaintiff had proven a

good and legal title in herself to the land in dispute; whereas, the plaintiff had failed to show (1) either a grant from the State to herself for the land in question, or to some one with whom she connected herself, or to show twenty years' possession in herself, or in some one with whom she connected herself, as would authorize the presumption of a grant; (2) or to show a common source; (3) or to show such adverse possession in herself, or some one from whom she can trace title, as would give her title under the statute of limitations.

6. "That it was error to hold that there was no testimony tending to show the agency of the Corbin Banking Company for the plaintiff; whereas, he should have held that the testimony of Fred. Cook and G. H. Bates, showing the acts of the plaintiff, and of the Corbin Banking Company and Bates & Simms, for her, were facts to go to the jury on the question of agency.

7. "That it was error to hold that the alleged possession of the Harleys and of Ingram could be tacked to make up the period of twenty (20) years' presumption of a grant from the State; whereas, the Court should have held that the introduction of the alleged deeds of the sheriff to Ingram and Ingram to the Harleys, and the Harleys' mortgage, and the foreclosure thereof, and the master's deed, rebutted any presumption that either of these respective parties were holding under a grant from the State.

8. "That it was error to refuse the motion for nonsuit when there was not a scintilla of testimony that the land sued for was the same land that was conveyed by the sheriff to Ingram and Ingram to Harley, etc.

9. "That it was error to permit the plaintiff to introduce a part of a letter, or other written document, and not require the introduction of the whole into testimony.

10. "That it was error to direct a verdict for the plaintiff upon the ground that there was no testimony going to prove the agency of the Corbin Banking Company for the plain-

tiff; whereas, he should have held that the testimony of the witness, Fred. Cook, to the effect that this property was put in the hands of the Corbin Banking Company by the plaintiff for sale and rent through its president, Mr. Austin Corbin, with full power to act for said plaintiff, was some testimony to go to the jury on the question of agency.

11. "That it was error to direct a verdict for the plaintiff upon the ground that there was not a scintilla of testimony that the plaintiff had ever ratified the sale of the land; whereas, he should have held that. there was testimony to go to the jury to establish the agency of the Corbin Banking Company for the plaintiff, and the acts of Bates & Simms, as agents for the plaintiff through the Corbin Banking Company, was binding upon the plaintiff, whether she ratified the sale or not, and was some testimony to go to the jury on the question of ratification of the sale.

12. "That his Honor further erred in directing a verdict upon the ground that there was not a scintilla of testimony going to show the ratification of this contract by the plaintiff, when the witness, George H. Bates, testified that the Corbin Banking Company had written to Bates & Simms ratifying the contract, and they so informed the appellant, who, upon the strength of this ratification, entered into possession and spent considerable sums of money in improving said lands before he was notified that the plaintiff declined to execute and deliver to him a deed."

*Messrs. G. M. Greene* and *J. A. Willis,* for appellant, cite: *Title can only be proved by going back to a grant from the State or a common source, or by possession:* 56 S. C. 276; 53 S. C. 220; 15 S. C. 268, 478; 16 S. C. 368; 20 S. C. 209; 59 S. C. 446; 1 McM. 450; 57 S. C. 293; 16 S. C. 368; 50 S. C. 457; 54 S. C. 139. *What proof is necessary to show title by adverse possession?* 56 S. C. 278; 57 S. C. 292; 14 S. C. 189; 39 S. C. 19; 54 S. C. 139; 53 S. C.

218; Dud. 177. *Character of agency is for jury:* 73 S. C. 57; 57 S. C. 280; 74 S. C. 225. ·

*Messrs. J. O. Patterson & Son,* contra, cite: *Levy on and sale of land as belonging to a judgment debtor raises the presumption it was his and he was in possession, and proof of chain of title from purchaser to plaintiff is sufficient:* 37 S. C. 309; 78 S. C. 154; 1 Hill Ch. 376; 72 S. C. 312. *No principal can be charged with contract of sale of lands by agent without written authority:* Code 1902, 2652.

. April 1, 1912. The opinion of the Court was delivered by

Mr. Justice Watts. This is an action brought by the plaintiff to recover the tract of land described in the complaint and for damages. In order to understand fully the questions raised by the exceptions, it will be necessary to set forth in the report of the case the complaint. answer and the exceptions.

At close of plaintiff's testimony a motion was made for a nonsuit, which was overruled, and when all the testimony was in his Honor, Judge DeVore, directed a verdict in favor of the plaintiff for the land, but submitted to the jury the question of damages. Defendant appealed.

The 1st, 2d, 3d, 4th and 8th exceptions question the Judge's refusal to grant a nonsuit. There was some testimony to go to the jury. The plaintiff offered in evidence a deed of A. H. Patterson, master, of date July 6, 1900, to plaintiff, and judgment rolls, mortgage and deed connecting the property in dispute to June 20, 1868, when it was conveyed by deed of Woodward, sheriff, to J. J. Ingram, and by deed of Ingram to S. F. Harley, March 25, 1874. Mortgage of Harley to Voohees, September 3, 1889. Judgment roll, Voorhees v. Harley, and sale under that by Patterson, master, to the plaintiff. Here

we have the plaintiff with a paper title, dated July 6, 1900, claiming the land, and records showing those under whom she claimed were asserting title under paper deeds as far back as June 20, 1868, and we think there was sufficient testimony as to the identity of the land, and possession of those under whom she claimed, and in herself, to carry the case to the jury.   It has been decided that the right of possession follows title, and when it was admitted that the plaintiff had title from Patterson, master, she was presumed to be in possession of the land described in the deed. These exceptions are overruled.

The other exceptions question the Court's ruling in directing a verdict for plaintiff, as far as the land was concerned.   It appears not only that the plaintiff established paper title in herself, and those under whom she claimed, for more than twenty years, but the answer of defendant admits title in plaintiff, for in his second defense he alleges that he purchased the property described in the complaint from one C. Dupuy for the sum of three hundred ($300.00) dollars, under an agreement with Bates & Simms, agents and attorneys, and the testimony in the case shows that the plaintiff, C. E. R. Dupuy, and C. Dupuy was the same person.   The evidence of Fred. Cook, a witness, whose testimony was taken *de bene esse*, under notice of plaintiff, but whose testimony was offered by defendant, establishes the fact that the plaintiff turned over the management of this land to the Corbin Banking Company, for the purpose of selling, renting and paying taxes, and that Bates & Simms, for the Corbin Banking Company, paid the taxes for Dupuy and collected the rent. He says Dupuy owned this land.   This is evidence introduced by the defendant.   Dupuy obtained title from Patterson, master, July 6, 1900.   The proof shows that after that time it was rented for her; that taxes were paid for her.   This shows that she exercised ownership over the property for more than ten years before the commencement

of this action. Mr. Justice McGowan, in *Harrelson* v. *Sarvis*, 39 S. C. 18, 17 S. E. 368, says: "It is certainly true that in actions for the recovery of land the plaintiff must recover, if at all, upon the strength of his own title and not on the weakness of that of his adversary. But it is not necessary that under all the circumstances there should be an unbroken chain of paper title back to the grant. The statute of limitations has a double aspect. Besides affording a shield of defense, it may under certain circumstances give title capable of being asserted actively." As was said by Judge Earle, in *Young* v. *Watson*, 1 McMull 449, cited with approbation in the case of *Geiger* v. *Kaigler*, 15 S. C. 273: "A plaintiff can only make out a perfect title by producing a grant or by proving such a possession as will give title in himself or in some one from whom he derives title." The same view is taken in 13 A. & Eng. Enc. L., page 643: "Where property, whether real or personal, is held adversely the statute operates on the title, and when the bar is complete the title of the original owner is defeated and the adverse possessor has a complete title." So we think in this case that the plaintiff showed by proof such a possession in herself, and others from whom she derives title, as to make out a perfect title in herself. We also think that an adverse possession for ten years entitled plaintiff to recover land of which she had such possession. *Duren* v. *Kee*, 50 S. C. 457, 27 S. E. 875; *Busby* v. *Railroad*, 45 S. C. 315, 23 S. E. 50. The evidence in this case shows that the plaintiff was not only herself in possession for more than ten years, but that she, and those under whom she claimed, were in possession under claims of paper title for more than twenty years. The defendant absolutely failed to make out any defense, as set up by him in his answer. There was nothing to go to the jury.

The testimony of Mr. Bates only went to show that his firm had charge of the property, rented it, paid taxes and remitted rent to Corbin Banking Company; that they

attempted to sell the property; that the owner refused the offer. This is borne out by the correspondence in the case between Bates & Simms and Corbin Banking Company, and the testimony of Fred. Cook, introduced on the part of defendant. Nowhere in the testimony do we find any competent testimony establishing the agency of any one to sell the land of plaintiff without submitting an offer to her for her acceptance or refusal. On the contrary, we find an offer to buy and a refusal to accept the offer by plaintiff, and defendant went into possession of the property as a pretended purchaser, having attempted to purchase from parties having no authority to sell, but only authority to offer land for sale subject to ratification by owner, and the owner refused to accept the offer by defendant, and defendant was in possession of property wrongfully and without authority. We see no merit in the exceptions and they are overruled.

Judgment affirmed.

MR. JUSTICE HYDRICK *concurs in the result.*

MR. JUSTICE WOODS, *concurring in the result.* This case is presented in an unusual form. The action was to recover the possession of land. By his answer the defendant admitted the plaintiff's legal title, but alleged that plaintiff had contracted with him to sell the land at the price of three hundred dollars, and that he had paid the purchase money and entered into possession. On these allegations the defendant asked for the equitable relief of specific performance. It is manifest in this state of the pleadings that no legal issue was involved, and that the case was one of equitable cognizance entirely. Yet the cause was tried before a jury, as if nothing but a legal issue was involved. As no objection was made to this course, the appeal is considered as if the Court had ordered the issue of fact to be submitted to the jury, whether the plaintiff had authorized

Messrs. Bates & Simms to make the contract which they undertook to make with the defendant for the sale of her land at the price of three hundred dollars.

On this issue I concur in the conclusion of Mr. Justice Watts, that there was no evidence from which such authority could be inferred, and that the Circuit Judge was right in directing a verdict in favor of the plaintiff.

3    As evidence of such authority the defendant relies on the testimony of Cook, the manager of the Corbin Banking Company, taken *de bene esse* and introduced by the defendant, and of Mr. Bates, of the firm of Bates & Simms. It is true that Cook testified: "The tract of land referred to is the property of C. E. R. Dupuy, of Paris, France, who placed her properties for sale and rent in the hands of the Corbin Banking Company, through its president, Mr. Austin Corbin, with full authority to act for her." But it is also true that the testimony of Cook makes it perfectly clear that he understood that this authority to sell was subject to the approval of the owner, and that he so expressly informed Messrs. Bates & Simms, for in his testimony appears a letter from the Corbin Banking Company to Messrs. Bates & Simms, written October 11, 1904, more than a month before they undertook to contract to sell, and in answer to their letter advising a sale at three hundred dollars, in which is found the following: "You give in your letter referred to a description of the land. In order that we may be prepared to make a deed, in case of acceptance by the owner, would say that our title deeds show as follows: * * *" That all parties understood that the agency was to sell, subject to the approval of the owner, is made still clearer by the following testimony of Mr. Bates, relied on by the defendant: "Mr. Bates, you say that these receipts—Williams came and left the money with you? Williams came and offered $300 for this tract of land and paid the money down in my hands, and I gave him a receipt dated in October, 1904. I sent that offer to the Corbin

Banking Company and recommended that it be accepted, because it was the best offer we had ever had for this land, and afterwards, I don't know how long, we received a letter from the Corbin Banking Company stating that the offer had been accepted, and when we received that offer we gave Wiliams that certificate certifying that he had bought the land. He afterwards came for his title and we wrote to the Corbin Banking Company to know why the title had not been sent, and they replied that Mrs. Dupuy refused to sign the title. We had been notified that the offer had been accepted before that. When they refused to send the title, we offered to pay Williams his $300 back and he refused it, and we have got that money now. The Corbin Banking Company would not take it, because they would not send us the title. We have been holding it subject to settlement in some way." Giving the fullest credence to this evidence of Mr. Bates, what is its effect? It is nothing more than his statement that the Corbin Banking Company had said to him in writing that Mrs. Dupuy had authorized the sale of her property for three hundred dollars. This was clearly hearsay testimony, and not binding on the plaintiff. To bind her there should have been evidence from a witness testifying of his own knowledge that she had authorized the sale. So far from producing testimony from such a witness, the only witness examined who had direct communication with Mrs. Dupuy was Cook, the manager of the Corbin Banking Company, and his testimony was to the effect that she expressly refused to authorize the sale for three hundred dollars.

Mr. Justice Fraser *concurs.*

Mr. Chief Justice Gary, *dissenting.* I concur in so much of the opinion of Mr. Justice Watts as overrules the exceptions assigning error on the part of his Honor, the

presiding Judge, in refusing the motion for a nonsuit, not only for the reasons stated by him, but on the additional ground, that it appears from the defendant's testimony, that he holds under the plaintiff, and it was for the jury to determine who had the better title.

In determining whether there was error, in refusing the motion for a nonsuit, this Court will consider, not only the plaintiff's, but the defendant's testimony. *Hicks* v. *Ry.,* ·63 S. C. 559, 41 S. E. 753; *Scates* v. *Henderson,* 44 S. C. 554, 22 S. E. 724; *Fales* v. *Browning,* 68 S. C. 19, 46 S. E. .545; *Woodward* v. *Cave,* 79 S. C. 578, 61 S. E. 82.

But I dissent from his conclusion, that the exceptions should be overruled, which raise the question, whether there was error in directing the jury, to render a verdict in favor of the plaintiff, for possession of the land in dispute.

The following exceptions raise this question:

"That it was error to hold, that there was no testimony tending to show, the agency of the Corbin Banking Company for the plaintiff; whereas, he should have held that the testimony of Fred. Cook and G. H. Bates, showing the acts of the plaintiff, and of the Corbin Banking Company and Bates & Simms, for her, were facts to go to the jury on the question of agency."

"That it was error to direct a verdict for the plaintiff, upon the ground that there was no testimony, going to prove the agency of the Corbin Banking Company, for the plaintiff; whereas, he should have held, that the testimony of the witness, Fred. Cook, to the effect that this property was put in the hands of the Corbin Banking Company by the plaintiff, for sale and rent through its president, Mr. Austin Corbin, with full power to act for said plaintiff, was some testimony to go to the jury, on the question of agency."

"That it was error to direct a verdict for the plaintiff, upon the ground that there was not a *scintilla* of testimony, that the plaintiff had ever ratified the sale of the land;

whereas, he should have held, that there was testimony to go to the jury, to establish the agency of the Corbin Banking Company for the plaintiff, and the acts of Bates & Simms as agents for the plaintiff, through the Corbin Banking Company, were binding upon the plaintiff, whether she ratified the sale or not, and was some testimony to go to the jury, on the question of ratification of the sale."

"That his Honor further erred in directing a verdict, upon the ground that there was not a *scintilla* of testimony, going to show the ratification of this contract by the plaintiff, when the witness, George H. Bates, testified that the Corbin Banking Company had written to Bates & Simms ratifying the contract, and they so informed the appellant, who, upon the strength of this ratification, entered into possession and spent considerable sums of money, in improving said lands, before he was notified, that the plaintiff declined to execute and deliver to him a deed."

The defendant introduced in evidence the following receipt:

"Barnwell, S. C., Oct. 4, 1904.

"Received of H. A. Williams three hundred dollars, as purchase money for 175 acres of land, more or less, known as the S. F. Harley place, in Bennett Springs township, now owned by C. Dupuy. This, however, is subject to approval of the owner of this land, and, if refused, the same is to be returned to the said H. A. Williams.    Bates & Simms."

Also the following certificate:

"Barnwell, S. C., Nov. 21, 1904.

"This will certify to all whom it may concern, that H. A. Williams has purchased the S. F. Harley place, containing 175 acres, more or less, and is entitled to the possession of the same.    Bates & Simms, Attorneys."

The defendant testified, that he entered into the possession of the land, soon after the said certificate was delivered to him; that he has made valuable improvements

thereon, and has remained in the continuous possession thereof.

. His Honor, the presiding Judge, made the following ruling: "There is enough testimony here, as to the agency of Bates & Simms, of the Corbin Banking Company, to go to the jury." Thus showing that there was testimony tending to prove, that Messrs. Bates & Simms were duly authorized by the Corbin Banking Company, to sell the land to the defendant. We do not, therefore, deem it necessary, to consider the question of agency in this respect, but proceed to discuss the question, whether there was any testimony tending to show, that the Corbin Banking Company, was empowered by the plaintiff, to sell said land.

Mr. Fred. Cook, a witness for the plaintiff, in his testimony, taken *de bene esse,* thus testified: "Are you connected with the Corbin Banking Company? If so, state in detail such connection. I came with the Corbin Banking Company, in the year 1874, and have been connected with it ever since, and as general manager for over twenty years past, and as such have had access to all their books and correspondence. Please state, as fully as possible, what you know in regard to the lands described in the complaint. The tract of land referred to is the property of C. E. R. Dupuy, of Paris, France, who placed her properties for sale and rent, in the hands of the Corbin Banking Company, through its president, Mr. Austin Corbin, *with full authority to act for her.*" (Italics ours.)

Mr. George H. Bates, a witness for the defendant, testified as follows:

"Mr. Bates, you say that these receipts—Williams came and left the money with you? Williams came and offered $300 for the tract of land, and paid the money down in my hands, and I gave him a receipt, dated in October, 1904. I sent that offer to the Corbin Banking Company, and recommended that it be accepted, because it was the best offer we had ever had, and afterwards, I don't remember how long,

we received a letter from the Corbin Banking Company, stating that the offer had been accepted, and when we received that letter, we gave Williams that certificate certi-. fying that he had bought the land. He afterwards came for his title, and we wrote to the Corbin Banking Company, to know why the title had not been sent, and they replied that Mrs. Dupuy had refused to sign the title. We had been notified, that the offer had been accepted, before that. When they refused to send the title, we offered to pay Williams his $300 back, and he refused it, and we have got that money now. The Corbin Banking Company would not take it, because they would not send us the title. We have been holding it, subject to settlement in some way."

It will thus be seen, that the plaintiff placed the land for sale, in the hands of the Corbin Banking Company, with full authority to effect the sale; that the Corbin Banking Company, duly constituted and appointed Messrs. Bates & Simms their agents, and that the transaction with the defendant, came within the scope of their agency; that the receipt and certificate were given, the defendant entered into possession of the land and made valuable improvements, and was notified that his offer had been accepted, before the plaintiffs refused to make the title.

If there was such a contract between the plaintiff, through her duly authorized agents and the defendant, as the Court, in the exercise of its equitable powers would enforce, then a revocation by her of the authority conferred upon her agents, could not convert the defendant, who entered by permission of the plaintiff through her agents, into a trespasser, even though the contract was not reduced to writing.

"According to the authorities it seems, that putting the purchaser into possession, is to be considered as stronger evidence of part performance, than mere payment of the purchase money, for the reason that such act would be a fraud upon the purchaser, unless the agreement should be fully performed. 'Especially will it be held to do so, when

the party let into the possession has expended money in building or repairs, or other improvements, for under such circumstances, if the parol contract were to be deemed a nullity, he would be liable to be treated as a trespasser, and the expenditure would not only operate to his prejudice, but be the direct result of a fraud practiced upon him.' 2 Story's Eq. 765." *Mims* v. *Chandler,* 21 S. C. 480.

This language was quoted with approval in *Bell* v. *Lumber Co.,* 85 S. C. 182, 67 S. E. 151.

The present case is much stronger than the one just mentioned.

Furthermore, when a principal enters into a contract with an agent, whereby the agent undertakes to negotiate the sale of his lands, the authority thus conferred is either revocable or irrevocable, and, whether it is the one or the other, depends upon the terms of the particular contract. *McCallum* v. *Grier,* 86 S. C. 162, 68 S. E. 466.

As the question whether the plaintiff had the right to revoke the authority, conferred by her upon the Corbin Banking Co., was necessarily involved, in the ruling of the presiding Judge, he was not in a position to decide whether the plaintiff had such power, as the contract was not before him for construction.

It seems to me that these authorities are conclusive of the question, and that the judgment of the Circuit Court should be reversed.