1997

Lex D. WALTERS, Respondent v. SUMMEY BUILDING SYSTEMS, INC., and The Tower South Property Owners Association, Inc., of whom The Tower South Property Owners Association, Inc., is Appellant. Appeal of TOWER SOUTH PROPERTY OWNERS ASSOCIATION, INC.

(429 S.E. (2d) 854)

Court of Appeals

*Howell V. Bellamy, Jr.,* and *Preston B. Haines, III* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A.,* Myrtle Beach, *for appellant.*

*C. Rauch Wise;* and *Joseph M. Pracht* of *Pracht & Wyndham,* Greenwood, *for respondent.*

Submitted Jan. 18, 1993; Decided April 19, 1993.

Reh. Den. June 1, 1993.

CURETON, Judge:

Respondent Lex Walters (owner) brought this declaratory judgment action against Summey Building Systems and The Tower South Property Owners Association (association) to determine the rights and obligations of the parties to a condominium unit located in The Tower South Horizontal Property Regime (regime). The trial court found for the owner and the association appeals. We reverse and remand.[1]

This dispute arose over whether the owner purchased a two- or three-bedroom unit. The owner bought the unit described in his deed as "Dwelling No. GG-1" at an auction on June 26, 1988. The auction brochure listed the floor plan for these units as having three bedrooms. This brochure urged purchasers to inspect the premises before purchasing and noted that there were no warranties except as specifically stated in the brochure. Additionally, the brochure noted that the units were open for inspection seven days per week and that certain documents were available for inspection, and recommended the retention of an attorney.

The regime's master deed was available for inspection. This document incorporated a plat and bound all purchasers to its covenants. Although the master deed listed unit GG-1 as having the same percentage of ownership of the common elements as three-bedroom units, the floor plans depict the unit as having two bedrooms with a contiguous office/storage space which has a separate entrance and is totally unconnected to the unit. Testimony confirmed that the floor plan reflects that the units in the "GG" section contain three bedrooms except for unit GG-1, which has an office/storage room in the location equivalent to the third bedroom in the other "GG" units. Moreover, the plat indicates unit GG-1 consists of two bedrooms with an adjoining storage unit delineated for common element usage. The association had been using this space as its security and management office.

---

[1] We decide these issues without oral argument, having determined it would not aid the court in its decision.

Furthermore, the owner's contract of sale[2] recites that he purchased property referred to as unit GG-1 in the recorded master deed and plats, that he had inspected the premises, and that he accepted the premises "as is" and without any express or implied warranty other than as to validity of the title.

Despite ample opportunity, the owner chose not to inspect the property prior to auction. He was the winning bidder on unit GG-1 and believed it to be a three-bedroom unit. The date of the auction, he learned he had bid on a two-bedroom unit. Upon inquiry about refund of his deposit, he was told to close the transaction or default. He closed and accepted an indenture deed from the owner.

At issue is not only the ownership of the third bedroom, but also the right of the regime to charge the owners a regime fee in an amount equal to those of three-bedroom units, which is substantially higher than the fee for a two-bedroom unit. The management bases this higher fee on the unit's percentage of ownership in the common elements and the site plan.

The owner brought this declaratory judgment action for a determination of the dimensions of unit GG-1 and the pro rata percentage of dues and assessments properly allocated to that unit. He did not allege fraud or misrepresentation surrounding his purchase of the unit or ask that the sale of the unit be rescinded. In fact, he freely admitted at trial that he accepted title to the unit with full knowledge that it had only two bedrooms.

The association argues that the trial judge erred in ruling that the owner was entitled to possession of the office/storage room. We agree. "The construction of an unambiguous deed is a question of law, not fact. The terms of such a deed may not be varied or contradicted by evidence drawn from sources other than the deed itself." *Vause v. Mikell*, 290 S.C. 65, 68, 348 S.E. (2d) 187, 189 (Ct. App. 1986) (citation omitted); *see Hammond v. Lindsay*, 277 S.C. 182, 284 S.E. (2d) 581 (1981); *Smith v. DuRant*, 236 S.C. 80, 113 S.E. (2d) 349 (1960).

Extrinsic evidence is admissible to resolve ambiguities but not to create them where none exist. The owner did not plead or attempt to show at trial that an ambiguity existed in the

[2] The parties entered into a contract of sale subsequent to the auction.

master deed, bylaws, and plats, which are the constituent documents of the regime. The owner's indenture deed is not ambiguous on its face.

The master deed clearly recites that the area dimensions and descriptions of the various common elements, limited common elements, and apartment units contained within Tower South are to be determined by reference to the regime's recorded plats and plans. Likewise, the owner's indenture deed recites that the property conveyed by it consists of dwelling number GG-1 as shown upon the regime plans. Where a deed describes the property to be conveyed as is shown on another recorded document, the document becomes a part of that deed for the purpose of showing the boundaries, metes, courses, and distances of the property conveyed. *Hammond v. Lindsay*, 277 S.C. at 184, 284 S.E. (2d) at 582; *Hobonny Club, Inc. v. McEachern*, 272 S.C. 392, 397, 252 S.E. (2d) 133, 136 (1979).

The regime plats and other documents were available to the owner prior to auction and put him on notice to inquire whether the office/storage area was part of unit GG-1. The owner's decision to bid on the unit without inspecting it was negligence. Moreover, the owner was fully apprised of the status of unit GG-1 prior to closing. He had actual knowledge from personal inspection as to the dimensions and number of bedrooms contained within the unit, but knowingly elected to proceed with closing and to accept the unit. It would be inconsistent to hold that the owners' deed is ambiguous because it does not convey a three-bedroom unit, when he knew at the time he accepted the deed that the grantor intended to convey only a two-bedroom unit.

Finally, we view as untenable the association's contention that while the owner received title to a two-bedroom condominium, he should, nonetheless, be required to pay regime fees on a three-bedroom condominium.[3] All contracts should receive a sensible and reasonable con-

---

[3] We recognize that the actual floor space of Walters' condominium is more than the usual two-bedroom condominium in the complex but less than a three-bedroom condominium. Additionally, the fact Walters did not receive title to the third bedroom was apparently reflected in the purchase price. We also note that the association appears to have arbitrarily based regime fees upon the number of bedrooms in units as opposed to the market value or selling price of the units.

struction instead of one which will lead to absurd consequences or unjust results. *Proffitt v. Sitton*, 244 S.C. 206, 212, 136 S.E. (2d) 257, 260 (1964). To resolve this inequity, the trial court should declare that the owner need only pay regime fees on a two-bedroom condominium, the alternative relief sought by him.[4] Accordingly, we remand for the entry of an order holding the owner responsible for payment of regime fees on a two-bedroom unit, and for a determination of what fees, if any, he is entitled to be reimbursed.

Reversed and remanded.

GOOLSBY, J., concurs.

LITTLEJOHN, Acting Judge, dissents in separate opinion.

LITTLEJOHN, Acting Judge (dissenting):

I respectfully dissent. Initially, this case fell to me and I had proposed an opinion affirming the trial judge. A majority of the panel now having taken a contrary view, I file my proposed opinion, in full, as my dissent:

Respondent Lex Walters (owner) brought this declaratory judgment action against Summey Building Systems, Inc. and The Tower South Property Owners Association, Inc. (Association) to determine the parties' rights and obligations in and to a condominium unit located in The Tower South Horizontal Property Regime (regime). The trial court found for the owner and the Association now appeals. We affirm.[1]

The dispute arose over whether the owner purchased a two-bedroom or a three-bedroom unit. The owner's deed described the property as Dwelling GG-1 and referenced the Master Deed. The Master Deed listed unit GG-1 as owning the same percentage of the common elements as three-bedroom

---

[4] We are aware that the percentage ownership in the common elements must be established at the time the master deed is recorded and once the percentage has been established, it cannot be changed without the consent of all unit owners. S.C. Code Ann. § 27-31-60 (1976) as amended. Moreover, regime fees must be allocated among all unit owners in the same proportion that the value of each unit bears to the value of all units in the regime. S.C. Code Ann. § 27-31-190. However, this opinion does not require adjustment in Walters' percentage ownership in the common elements but rather in the amount of his regime fees.

[1] We decide these issues without oral argument, having determined it would not aid the court in its decision.

units. The floor plans in the Master Deed depicted the unit as having two bedrooms with a contiguous office/storage space with a separate entrance where a third bedroom would be. The Association had been using this space as its security and management office.

The owner bought this unit at auction in reliance on the auction brochure and pamphlets which showed the GG units as having three bedrooms. He was denied access to view the unit after the auction but nevertheless signed the contract of sale. Upon discovering that GG-1 had only two bedrooms, he attempted to buy another unit or obtain a refund of his deposit. He was required to close the deal or forfeit his earnest money. The owner closed on August 17, 1988.

At issue is not only ownership of the third bedroom, but the right of the regime to charge a regime fee for a three-bedroom unit which is substantially higher than the regime fee for a two-bedroom unit. The regime fee is, of course, a continuing annual charge. The owner argues that it would be grossly unfair to saddle him with the greater amount.

The management for the regime has billed the owner for regime fees on a three-bedroom unit in reliance on the unit's percentage of ownership in the common elements and the regime's site plan. After unsuccessful attempts to get the Association to adjust his regime fee to that charged a two-bedroom unit, the owner brought this action to determine what was included in the property description for unit GG-1. After trial without a jury, the judge granted possession of the office/storage space to the owner. The Association appealed; the seller did not.

The Association argues that the description in the owner's deed unambiguously shows that he purchased a two-bedroom unit. Consequently, parol evidence is unnecessary for the determination of these issues. It asserts the trial court was without authority to give possession of the office/storage space (a common element) to the owner as this amounted to an alteration of the percentage of ownership in the common elements. We find no error in the decision of the trial judge.

Generally, parol evidence is inadmissible to vary the terms of a deed. *Vause v. Mikell by Solomonic*, 290 S.C. 65, 348 S.E. (2d) 187 (Ct. App. 1986). However, when a latent ambiguity arises, the admission of parol evidence is proper to ascertain a

correct conclusion. *Richardson v. Register*, 227 S.C. 81, 87 S.E. (2d) 40 (1955). An ambiguity is latent when there is no defect on the face of the document but upon attempting to put it into effect an uncertainty appears. *Jennings v. Talbert*, 77 S.C. 454, 58 S.E. 420 (1907).

Having found the deed ambiguous, we must then decide the issue of ownership of the office/storage space in light of all the circumstances surrounding and connected with the parties and the land at the time of the conveyance. *Scates v. Henderson*, 44 S.C. 548, 22 S.E. 724 (1895). Furthermore, in construing an ambiguity as to quantity of land, a construction against the grantor is favored. 23 AM. JUR. (2d) *Deeds* § 299 (1983).

The owner's deed designated which unit was conveyed and was, therefore, not ambiguous on its faces. However, when the owner tried to claim under the deed, he was told on one hand he owned a three-bedroom unit for regime fee payment purposes but then denied possession of the office space which was a substitute for his third bedroom. An ambiguity existed which rendered the admission of parol evidence proper.

As a result, we have examined all of the circumstances of the auction and the conveyance of unit GG-1. Clearly, the grantor represented and the owner intended that he would receive a three-bedroom unit or its equivalent. The floor plans in the auction brochures showed the GG units as three bedrooms. GG-1's ownership in the common elements was equal to that of three-bedroom units. Even the floor plans in the Master Deed showed GG-1 as having the same layout as a three-bedroom unit; the difference was that the third bedroom had been used as office/storage space. Moreover, the auctioneer did not differentiate GG-1 from other GG units. We find that the trial judge was correct when he ordered possession of the office/storage space to the owner.

Because the office/storage space is the property of the owner and not a common element of the regime, the issue of the court's authority to alter percentages of ownership in the common elements need not be addressed.

[I would affirm.]