603 S.E.2d 905

SCRATCH GOLF COMPANY, Respondent,

v.

DUNES WEST RESIDENTIAL GOLF PROPERTIES, INC.; Dunes West Property Owners Association, Inc.; Allan Feker, a/k/a Ali Daghighfekr; Melinda McDonald; Julian Michael Murrin; Larry Schultz; Wilbur "Bill" Upson; Kathy Merritt; William "Bill" Fellers; Charles V. Cuddeback; and John Does and Jane Does, as past and current directors and officers of Dunes West Property Owners Association, Inc., Defendants,

of whom Dunes West Residential Golf Properties, Inc., and Allan Feker, a/k/a Ali Daghighfekr, are Appellants.

No. 25878.

Supreme Court of South Carolina.

Heard May 25, 2004.
Decided Oct. 11, 2004.

118

John A. Massalon, of Wills and Massalon, of Charleston, for Appellants.

H. Brewton Hagood and Richard S. Rosen, both of Rosen, Rosen, and Hagood, of Charleston, for Respondent.

Chief Justice TOAL:

Dunes West Residential Golf Properties (Developer) asserts that the Master–in–Equity erred in granting a preliminary injunction in favor of Scratch Golf Company (Scratch Golf). The action arose after the Dunes West Golf Course was damaged by the alleged saltwater infiltration of various irrigation ponds that were supposed to be maintained by the Developer. The Master granted a preliminary injunction in favor of Scratch Golf, ordering the Developer to place $4.5 million into an escrow account to provide a fund for the damages arising out of Scratch Golf's pending civil action for breach of contract and negligence against the Developer. We find that the Master erred in granting the preliminary injunction because Scratch Golf did not present sufficient evidence to establish that injunctive relief was appropriate.

## FACTUAL/PROCEDURAL BACKGROUND

The Dunes West subdivision in Mount Pleasant, South Carolina, began as a joint venture between Wild Dunes Associates and Georgia–Pacific Investment Corporation (Joint Venture). In 1991, Scratch Golf purchased Dunes West Golf Club and now owns and operates the golf course and its facilities. In 1998, Allan Feker (Feker) purchased all of the undeveloped property in the community from the Joint Venture and immediately assigned his rights to a shell corporation, Dunes West Residential Golf Properties (Developer). The Developer assumed all of the Joint Venture's rights and obligations, including its obligation under section 7.2(w) of the Sale and Purchase Agreement with Scratch Golf to maintain the water quality of the subdivision's lagoon system.

Various freshwater lagoons surround the Dunes West Golf Course and provide a source of water that Scratch Golf uses to irrigate the golf course. The lagoons collect rainwater, and if the water level rises too high, the excess water will flow into adjacent saltwater creeks through an outflow pipe. The pipe system is only supposed to allow the fresh water to flow out, but in some lagoons—most notably the lagoon located next to the 17th hole—the saltwater flows in through the pipes and

infiltrates the freshwater lagoons.[1] Because the saltwater contamination of the lagoons has allegedly damaged the golf course, Scratch Golf filed a cause of action for breach of contract and negligence against the Developer and the Dunes West Property Owners Association.

Meanwhile, based on its concern that it would be unable to collect on a judgment entered against the Developer, Scratch Golf argued before the Master that he should grant a preliminary injunction in order to capture some of the Developer's assets before the undeveloped Dunes West property was sold to John Weiland Homes. Scratch Golf asserted that the total damages caused by the saltwater contamination were $6 million, which represents the cost of rebuilding much of the golf course. The Developer, however, asserted that the damages amount to $600,000.[2]

The Master granted Scratch Golf's motion for a preliminary injunction and set an escrow amount at $4.5 million. In addition, pursuant to Rule 65, SCRCP, the Master held that Scratch Golf would purchase a $1 million bond as security in the event the Developer was wrongfully enjoined. The Developer has appealed the Master's ruling, and pursuant to Rule 204(b), SCACR, this Court certified the case from the court of appeals.

The Developer raises the following issues on appeal:

I.   Did the Master have the authority to issue the preliminary injunction?

II.  Did the Master err in finding that Scratch Golf presented sufficient evidence to justify an injunction?

III. Did the Master err in setting the amount of Scratch Golf's bond at $1 million?

## STANDARD OF REVIEW

▇▇ Upon review of an action in equity, this Court may make factual findings based on its own view of the preponder-

---

1. The saltwater inflow occurs during an above-average high tide.

2. This amount comes from the affidavit of the Director of Golf Course Management at Kiawah Island Club, Tommy Witt, who is not an expert in engineering or plant and soil science. These damage figures only cover replacing dead grass and not replacing contaminated soil.

ance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

### I. Authority to Issue an Injunction

The Developer asserts that the Master did not have the authority to issue the preliminary injunction that poured $4.5 million of the Developer's assets into an escrow account. We disagree.

The Developer relies on a United States Supreme Court decision, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), which held that a U.S. District Court was not authorized to issue a preliminary injunction—absent a prior attachment of a money judgment—because the remedy was historically unavailable in a federal court of equity. This decision limiting a federal court's equitable powers is not dispositive of whether a state court judge may restrain a defendant's assets prior to the attachment of a money judgment. There is no federal question here that would cause the *Grupo* decision to be binding in this state court proceeding. Thus we decline to apply the *Grupo* analysis to this matter.

### II. Appropriateness of the Preliminary Injunction

■ The Developer asserts that the Master erred in granting the preliminary injunction because Scratch Golf did not present sufficient evidence to establish that injunctive relief was appropriate. We agree.

■ An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff. Flanagan, *S.C. Civil Procedure*, 507 (2d ed.1996). For a preliminary injunction to be granted, the plaintiff must establish that (1) it would suffer irreparable harm if the injunction is not granted: (2) it will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law. *County of Richland v. Simpkins*, 348 S.C. 664, 669, 560 S.E.2d 902, 904 (Ct.App.2002).

Although Scratch Golf may be able to satisfy elements 1 and 2, it cannot satisfy element 3 because there was an alternative

remedy at law available for Scratch Golf: the statutory remedy of attachment. Therefore, an injunction was not the appropriate remedy.

At the preliminary injunction hearings, Scratch Golf argued that if an injunction were not granted, it would suffer irreparable harm having no adequate legal remedy to recover the proceeds from the sale of Dunes West in order to satisfy the potential judgment it would have against the Developer. Scratch Golf feared that the Developer's $1 million umbrella insurance policy, the Property Owner's Association $1 million umbrella insurance policy, or any leftover proceeds from the sale of the development would not be available to satisfy a judgment. Scratch Golf further argued that even if there were leftover proceeds from the sale, the Developer would take the proceeds out of the state to invest elsewhere, making it difficult for Scratch Golf to recover its judgment interest from those proceeds.

This argument that Scratch Golf asserted—that once it receives a money judgment from its contract and tort action, it may have difficulty *collecting* from the Developer because the Developer may "take its assets and run" out of the state—is not proper justification for why a preliminary injunction should be issued but rather is justification for the statutory remedy of attachment. S.C.Code Ann. § 15–19–10 (2003), the attachment statute, provides:

In any action:

(8) When any person or corporation is about to remove any of his or its property from this State, or has assigned, disposed of or secreted or is about to assign, dispose of or secrete any of his or its property with intent to defraud creditors as mentioned in this chapter;

The plaintiff at the time of issuing the summons or any time afterwards may have the property of such defendant or corporation attached, in the manner prescribed in this chapter, as a security for the satisfaction of such judgment as the plaintiff may recover.

As this Court has stated, "[t]he purpose of attachment generally is to take a defendants property into legal custody so that it may be applied to the plaintiffs debt, when established." *John Deere Plow Co. of St. Louis v. L.D.*

*Jennings, Inc.*, 203 S.C. 426, 27 S.E.2d 571, 572 (1943). "[A]n attachment is merely a provisional remedy in aid of an action, and hence, to make it available, an action must be commenced in regular form." *Williamson v. Eastern Bldg. & Loan Ass'n.*, 54 S.C. 582, 32 S.E. 765, 770 (1899) (citation omitted).

We find Scratch Golf's argument that a preliminary injunction was necessary to protect its pre-judgment interest in the Developer's property should have been an argument justifying the necessity of an attachment. Due to the confusing and unusual posture of this case, we remand this matter to the Master so that the parties may argue the merits of whether an attachment—not an injunction—may be litigated pursuant to the attachment statute.

### CONCLUSION

We remand the matter to the Master for further proceedings to evaluate the attachment issue. We preserve the status quo, both the escrow of $4.5 million and the $1 million surety bond, until the Master issues an order resolving the attachment question.

**REVERSED AND REMANDED.**

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.