623 S.E.2d 833

An L. GROSSHUESCH, Guardian and Conservator of Eleanor A. Breedlove, and An L. Grosshuesch, Guardian and Conservator of Bernard H. Breedlove, Appellants,

v.

Lisa CRAMER; Nathan Cramer; Lawrence H. Gray, Jr.; Duane Marie Gray; and Sweetgrass Land Company, L.L.C., Respondents.

No. 26086.

Supreme Court of South Carolina.

Heard Nov. 29, 2005.
Decided Dec. 15, 2005.
Rehearing Denied Jan. 19, 2006.

Richard S. Rosen, of Rosen Rosen & Hagood, of Charleston, for Appellants.

Charles B. Macloskie, of Macloskie Law Firm, of Beaufort; Lionel S. Lofton and V. Lynn Lofton, both of Lofton & Lofton, of Charleston; G. Wells Dickson, Jr., of Charleston; and M. Duane Shuler, of Kingstree, for Respondents.

Chief Justice TOAL:

Bernard and Eleanor Breedlove (the Breedloves) appeal the trial court's decision denying their request for a preliminary injunction. This case was certified from the court of appeals pursuant to Rule 204(b), SCACR. We reverse.

### FACTUAL /PROCEDURAL BACKGROUND

The Breedloves are elderly individuals with substantial assets. In the mid to late 1990's, the Breedloves became acquainted with Lisa Cramer, an employee in the Personal Trust division of one of the Breedloves' banking institutions. Over time, Lisa Cramer became an individual in whom Eleanor Breedlove placed a considerable amount of trust and confidence. Specifically, Lisa Cramer left the bank and became the Breedloves' primary caregiver; providing housekeeping services and assisting the Breedloves in handling much of their day to day affairs. Additionally, Lisa Cramer became a trustee assisting in the management of different trusts in which the Breedloves had considerable assets.

Beginning as early as 2001, the Breedloves began to transfer substantial assets to Lisa and her husband, Nathan Cramer (the Cramers). As of June of 2004, the Breedloves had transferred various tracts of real estate worth over $2.1 million and liquid assets worth over $3.5 million. These transfers were effectuated by checks made payable to "Cash" drawn on the Breedloves' account, payments directly to Lisa Cramer, or checks written by the Breedloves to pay the Cramers' credit card bills or other expenses.

During the time of these transfers, the Breedloves were both suffering from some degree of dementia related to their advanced age.[1] Gradually, several people with whom the Breedloves dealt became suspicious that Lisa Cramer was taking advantage of the Breedloves' trust and confidence. After being alerted to an ongoing elder abuse and exploitation investigation conducted by one of the Breedloves' banking institutions, the Beaufort County Sheriff's Office arrested the Cramers. Lisa Cramer is currently under indictment in Beaufort County for violation of S.C.Code Ann. § 43–35–10(3)(b) (Supp.2004) ("Financial Exploitation of a Vulnerable Adult") and § 16–17–410 ("Conspiracy"). Nathan Cramer is under indictment for violation of § 16–17–410 ("Conspiracy").

The Breedloves instituted a civil action seeking to set aside these transfers on the grounds of fraud and undue influence. At the outset of the case, the Breedloves sought to prevent the respondents from transferring or otherwise disposing of the assets at issue.[2] To achieve this result, the Breedloves filed lis pendens against the subject real estate, and sought a preliminary injunction preventing the respondents from exercising control over any of the subject assets and ordering an accounting for all funds transferred to the Cramers from the Breedloves.[3] Throughout this litigation, the Cramers have

1. The Beaufort County Probate Court appointed An L. Grosshuesch as guardian and conservator for the Breedloves after the Breedloves commenced this lawsuit.

2. The respondents Lawrence H. Gray, Duane Marie Gray, and Sweetgrass Land Company, L.L.C., are alleged to be in possession of assets wrongfully taken by the Cramers, or are alleged to have wrongfully utilized the Breedloves' assets for their own benefit.

3. The Breedloves are specifically concerned about a Merrill Lynch account which initially contained $2 million. Since the time of the

4

maintained that these transfers were gifts from the Breedloves.

The trial court denied the Breedloves' request for an injunction. The court found that although the Breedloves had shown irreparable harm and a likelihood of success on the merits, the Breedloves failed to show the absence of an adequate remedy at law. The trial court read this Court's decision in *Scratch Golf Co. v. Dunes West Residential Golf Properties, Inc., et al.,* to require the Breedloves to seek relief through the statutory remedy of attachment. 361 S.C. 117, 603 S.E.2d 905 (2004). The Breedloves now raise the following issue for review:

> Did the trial court err in denying the Breedlove's request for a preliminary injunction because attachment was an adequate remedy at law?

### LAW/ANALYSIS

 Actions for injunctive relief are equitable in nature. *Wiedemann v. Town of Hilton Head,* 344 S.C. 233, 236, 542 S.E.2d 752, 753 (Ct.App.2001). In equitable actions, the appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence. *Doe v. Clark,* 318 S.C. 274, 276, 457 S.E.2d 336, 337 (1995). To obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law. *County of Richland v. Simpkins,* 348 S.C. 664, 669, 560 S.E.2d 902, 904 (Ct.App.2002).

### I. Adequate Remedy at Law

 Because the trial court based its refusal to issue an injunction on the existence of an adequate remedy at law, we will address this issue first. The trial court found this court's *Scratch Golf* decision to require the Breedloves to use attachment to preserve the disputed assets until the disposition of the case. We disagree.

In *Scratch Golf,* a golf course sued a developer alleging breach of contract and negligence in designing the golf

Cramers' arrest, approximately $1.4 million has been removed and transferred to an unknown location.

course's irrigation system. 361 S.C. at 120, 603 S.E.2d at 907. The golf course moved for a preliminary injunction freezing the developer's assets so there would be a pool of assets out of which any judgment for the golf course could be satisfied. *Id.* The trial court granted the golf course's request and ordered a large amount of money put in escrow. *Id.*

This Court reversed, finding that the golf course's arguments in favor of an injunction were really justifications for the statutory remedy of attachment. *Id.* at 122, 603 S.E.2d at 908. The golf course argued for an injunction on the grounds that the golf course would suffer irreparable harm having no adequate legal remedy to recover the potential judgment against the developer because the developer would move its assets elsewhere. *Id.* The Court drew guidance from the attachment statute, S.C.Code Ann. § 15–19–10 (2003), and case law, and concluded that attachment was the proper remedy when seeking to freeze another's assets for the purpose of satisfying a potential judgment. *Scratch Golf,* 361 S.C. at 122–23, 603 S.E.2d at 908.

The trial court incorrectly applied *Scratch Golf* to the instant case. *Scratch Golf* was an action at law, and the attachment issue dealt only with preserving another's assets for satisfaction of a potential judgment. This case is an equitable action in which the assets sought to be preserved, specifically $2 million worth of accounts, monies, and personal property, are the subject of the instant dispute. As distinguished from attachment, by which the court takes jurisdiction over the defendant's property "as a security for such judgment as a plaintiff may recover," § 15–19–10, this case involves the quintessential hallmark of an injunction: preservation of the property at issue until the matter has been adjudicated.

At least two significant obstacles would exist if the Breedloves pursued attachment in an effort to freeze the disputed assets. First, the record reveals that approximately $1.4 million has been removed from the Cramers' Merrill Lynch account since their arrest and transferred to an unknown location. Because attachment is effectuated by taking control of the defendant's property, and the location of the disputed property is not known, there is no way that any cash removed

from the account or any personal property purchased with the money could be attached.[4]

More significantly, attachment would be inappropriate in this case because ownership of the property has not been established. Section 15–19–10 provides that attachment is a process by which the property of the defendant is brought under the court's jurisdiction. Because this lawsuit's central issue is ownership of the disputed property, attachment would be entirely inappropriate in these circumstances.

For the foregoing reasons, we hold that the trial court erred in applying the reasoning of *Scratch Golf* to this case, and we find that the Breedloves lack an adequate remedy at law to preserve the $2 million and any assets purchased therewith until this lawsuit has been resolved.

## II. Likelihood of Success on the Merits & Irreparable Harm

The trial court found that the Breedloves had shown a likelihood of success on the merits and that they would suffer irreparable harm if a preliminary injunction was not issued. We agree and adopt the reasoning set forth in the trial court's order as to these issues.

### CONCLUSION

For the foregoing reasons, we reverse the trial court and issue a preliminary injunction freezing the Cramers' Merrill Lynch account and any other accounts, assets, and personal property purchased or acquired with the $2 million obtained from the Breedloves. This matter is remanded to the trial court with instructions to proceed consistent with this opinion.

**REVERSED AND REMANDED.**

MOORE, BURNETT, PLEICONES, JJ., and Acting Justice WILLIAM P. KEESLEY, concur.

---

4. The Cramers have continually refused to reveal the location of any of the disputed assets. At the hearing on the preliminary injunction, Lisa Cramer's attorney stipulated that if Lisa were called to the stand, she would assert her rights under the Fifth Amendment as to the location of any of these assets. Since possession of the assets is not at issue in either of the Cramer's pending legal matters, we do not view the Fifth Amendment as an impediment to the issuance of a preliminary injunction.