THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Alexanders Land Company, L.L.C.; Alexanders Restaurant Company, Inc.; Franz Auer; John Peterson, Jr., and Bruce O. Rossmeyer, Plaintiffs,
 Of whom Alexanders Land Company, L.L.C. and Alexanders Restaurant Company, Inc. are the Appellants,
 v.
 M&M&K Corporation; IFBIFB Corporation, and Roger Keyes are Defendants
 Of whom M&M&K Corporation and IFBIFB Corporation are the Respondents.
 
 
 

Appeal from Beaufort County
 Curtis L. Coltrane, Special Circuit Court Judge

Unpublished Opinion No.  2007-UP-364
Heard December 5, 2006  Filed August 29, 2007

REVERSED AND REMANDED 

 
 
 
 C. Mitchell Brown, of Columbia and Richard A. Farrier, Jr., Walter T. Cox and Andrea St. Armand, all of Charleston, for Appellants.
 Stephen E. Carter, of Hilton Head Island, for Respondents.
 
 
 

PER CURIAM: Alexanders Restaurant Company, Inc. (Purchaser) appeals the trial judges decision denying its request for specific performance of an option to purchase real estate.  We reverse and remand.

FACTS

In 1996, M&M&K Corporation (Seller) operated a restaurant called Alexanders (the Restaurant) on Hilton Head Island.  IFBIFB Corporation (Owner) owned the premises upon which the Restaurant was located (the Premises).  Rodger Keyes is the sole shareholder of both corporations.  At the time, Seller leased the Premises from Owner. 
 
On November 25, 1996, Purchaser entered into a complex business deal with Seller and Owner, for the sale of both the Restaurant and the Premises that would extend over a three to five year period.  The framework for the deal and the parties obligations were provided in an Asset Acquisition Agreement (the Agreement) to which three additional agreements related to the transaction were attached as exhibits: a Personal Property Lease (the Lease); a Sublease (the Sublease); and, a Restated Commercial Lease (the Restated Lease).[1] 
The Agreement provided for the purchase of the Restaurant business for a total of $1,300,000.00.  Under the Agreement, Purchaser was to take possession of the Restaurant, the Date of Possession, on December 2, 1996[2] and was to purchase and close on the Restaurant, the Closing Date, on December 1, 1999.  However, the Agreement gave Purchaser the right to extend the Closing Date for two, one year periods.  If Purchaser intended to extend the Closing Date, it had to give Seller written notice ninety days in advance of the Closing Date, September 1 of each year.  
 
During this period, while Purchaser maintained possession of the Restaurant but not yet purchased the business, Purchaser rented the Restaurant from Seller, as provided under the Lease.  The Lease contained identical dates as the Agreement, such that if Purchaser extended the Closing Date for the purchase of the business, the Lease would likewise be extended.  
 
Since the Restaurant was situated on leased premises, Purchaser also had to obtain Sellers right to lease the Premises from Owner.  The parties executed the Sublease which likewise contained identical dates as the Agreement and the Lease, such that the Purchaser had to extend the Sublease if it extended the Closing Date of the purchase of the business.  When Purchaser closed on the purchase of the business, the Restated Lease would take place of the Sublease.[3]  
Paragraph 22.16 of the Sublease contained an option (the Option) allowing Purchaser to purchase the Premises.  The Option likewise contemplated notice and closing dates similar to the Agreement, Lease, and Restated Lease.  The first time Purchaser could exercise the Option was, not earlier than ninety (90) days prior to the commencement of the first renewal term, i.e. September 1, 1999.  The last time Purchaser could exercise the Option was, not later than ninety days prior to the end of the second renewal term, i.e. September 1, 2001.  The Option also contained a condition precedent requiring Purchaser to have consummated the purchase of [Sellers] business, before it could exercise the Option.[4]  
 
From December 16, 1996 to August 26, 1999, the parties operated according to the terms of the Agreement, Lease, and Sublease.  On August 26, 1999, providing Seller ninety days notice, Purchaser extended the Closing Date on the purchase of the business, and thereby extended the Lease, Sublease and Option contained in the Sublease, for one-year.  In 2000, Purchaser did not provide ninety days written notice to extend the Closing Date, the Lease, Sublease or Option.  In November 2000, the parties began negotiating a modification of the Agreement to allow Purchaser to extend the Closing Date through December 1, 2001.  
 
The parties did not reach a compromise and Purchaser did not close on December 1, 2000, as required by the Agreement.  Accordingly, Seller sent notice of default on December 4, 2000, triggering Purchasers thirty-day cure period under the Agreement.  On December 13, Seller waived the default, and the parties reinstated the Agreement, Lease, and Sublease.  Seller additionally extended all of the agreements respective terms to provide a Closing Date of December 1, 2001.  
 
In summer 2001, the parties again began negotiating a modification, and resulting extension, of the Closing Date on the purchase of the business, Lease, Sublease, and Option.  On August 9, Terry Finger, the attorney for Purchaser, wrote Cary Griffin, the attorney for Seller and Owner, indicating Purchaser wished to exercise the Option to purchase the Premises but wanted to extend the Closing Date on the purchase of the business for an additional four years.  Griffin replied by letter dated August 14, indicating the Option to purchase the Premises was dependant on the purchase of the business such that Purchaser could not exercise the Option in 2001 without also purchasing the business in 2001.  Griffin also reminded Finger of the upcoming notice deadlines, as contemplated in the Agreement.  Griffin did suggest that perhaps at a later date and after a discussion with his clients that both purchases could be extended.  
 

 On August 27, Finger faxed a memo to Griffin:
 
 This confirms our recent phone conversations.  [Peterson] and his partners will exercise option on property and we would like to follow up on [Peterson and Keyes] recent conversation about extending remainder for 3-5 yrs.
 

On September 5, Griffin wrote Finger, informing him the Option had expired on September 1, 2001, no notice has been received as to the exercise of the Option to Purchase. . . . Hence, the Option to Purchase, on its face, is extinguished.  Griffin later testified that at the time of the September 5 letter, he did not know Fingers August 27 memo had been received by his office.    
 
Griffin and Finger attempted to resolve the problem.  On November 15, 2001, Finger tendered the earnest money deposit required in the Option.  Griffin returned the check, reiterating his position the Option had expired.  By mutual agreement, the parties closed on the Restaurant on December 7, 2001.  As a result, Purchaser owned the Restaurant and leased the Premises pursuant to the Restated Lease.  However, Purchaser reserved its right to litigate the issue of whether the Option expired.  
 
Purchaser filed a complaint against Owner, Seller, and Keyes (collectively Defendants).  Purchaser asked for specific performance of the Option.  In addition, Purchaser sought a declaratory judgment defining the rights of the parties pursuant to the Agreement, Lease, and Sublease.  Furthermore, Purchaser alleged unfair and deceptive trade practices, sought damages for breach of contract, and asked for quantum meruit recovery of the improvements it made to the Premises.  
 
Defendants answered, denying liability.  The trial judge held a hearing, at which the parties presented evidence.  Defendants argued the Option expired because (1) Purchaser failed to satisfy the condition precedent of purchasing the Restaurant before attempting to exercise the Option and (2) Purchaser failed to tender the earnest money deposit before the Option deadline of September 1, 2001.  Purchaser asked for the relief requested in its complaint.  Moreover, Purchaser contended Defendants should be equitably estopped from arguing the Option expired and Defendants did not comply with the default provision in the Agreement.  
 
The trial judge found in favor of Defendants, holding Purchaser failed to satisfy the condition precedent to exercise the Option and Purchaser did not properly exercise the Option because it did not tender the earnest money deposit.  Purchaser moved for reconsideration, and the trial judge issued an amended order correcting minor factual inaccuracies.  Subsequently, the trial judge issued a separate order awarding attorneys fees to Defendants.  This appeal followed.
STANDARD OF REVIEW
A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue.  Hardy v. Aiken, 369 S.C. 160, 164-65, 631 S.E.2d 539, 541 (2006).  An appellate court must look to the main purpose of a suit to determine its characterization.  Williams v. Wilson, 349 S.C. 336, 340, 563 S.E.2d 320, 322 (2002); Sloan v. Greenville County, 356 S.C. 531, 544, 590 S.E.2d 338, 345 (Ct. App. 2003).  Thus, characterization of an action as equitable or legal depends on the plaintiffs main purpose in bringing the action.  Ins. Finl Servs., Inc. v. S.C. Ins. Co., 271 S.C. 289, 293, 247 S.E.2d 315, 318 (1978).  Whether the action is one at law or in equity is determined by the nature of the pleadings and the character of the relief sought.  In re Estate of Holden, 343 S.C. 267, 278, 539 S.E.2d 703, 709 (2000).
In this case, Purchaser, as plaintiff, clearly requested equitable relief in the nature of specific performance and equitable estoppel.[5]  See Campbell v. Carr, 361 S.C. 258, 262-63, 603 S.E.2d 625, 627 (Ct. App. 2004) (recognizing an action for specific performance is one in equity); McDaniel v. S.C. Dept of Pub. Safety, 325 S.C. 405, 409, 481 S.E.2d 155, 157 (Ct. App. 1996) (holding estoppel is equitable in nature).  Purchasers primary cause of action seeks specific performance, while it secondarily asks for damages from breach of contract.  Moreover, Purchasers request for relief seeks a declaratory judgment and specific performance based on the rights as declared.  Furthermore, at trial, Purchaser characterized the action as one for specific performance of the Option.  
 
On appeal of an action in equity, tried by the judge alone, the appellate court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence.  Grosshuesch v. Cramer, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005).  However, this broad scope of review does not require the appellate court to disregard the findings of the trial judge.  Dearybury v. Dearybury, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).  
 
LAW/ANALYSIS
I.  Exercise of the Option
 Purchaser contends the trial judge erred in finding Purchaser had not properly exercised the Option because it did not: 1) tender the earnest money or 2) satisfy the condition precedent that it purchase the business prior to the exercise of the Option.  Additionally, Purchaser argues if it were required to perform the condition precedent of closing on the business prior to exercising the Option, the court should have found that such failure to perform was subject to the default and right to cure provisions in the Sublease.  
 
A.  Earnest Money and Condition Precedent
Option contracts are strictly construed in favor of the optioner and against the optionee.  Cotter v. James L. Tapp Co., 267 S.C. 647, 653, 230 S.E.2d 715, 717 (1976).  If the option requires performance in a certain manner, time is of the essence and exact compliance with the terms of the option are required.  Id. at 653, 230 S.E.2d at 717-18.  If the option contract specifically makes the tender of the purchase price a condition precedent to the options exercise, then the plain language of the contract controls and actual tender is required.  Ingram v. Kaseys Assocs., 340 S.C. 98, 110-11, 531 S.E.2d 287, 293 (2000).  However, in situations when the option contract does not specifically make tender a condition precedent, a court should consider the context in which the contract was made and attempt to effectuate the intent of the contracting parties.  Id. at 111, 531 S.E.2d at 293-94.  
 
The Defendants contend and the trial judge held that Purchasers written notice of its intent to exercise the Option on August 27, 2001, absent the tender of earnest money, did not comply with the exact terms of the Option as required by South Carolina law.  Thus, a review of South Carolina law on the exercise of options aids the court in determining this case. 
 
In Cotter v. James L. Tapp Co. the supreme court held written notice was insufficient to exercise an option.  267 S.C. at 655, 230 S.E.2d at 719.  Landlord leased Tenant space in a large shopping center and provided Tenant an option to lease adjacent areas that Tenant could exercise at any time during the first five years of the lease.  Id. at 650-51, 230 S.E.2d at 716.  The option could be extended upon the payment by tenant of an additional monthly fee.  Id.  The option to extend contained no notice requirement for its exercise.  Id.  On February 13, 1975, Tenant sent a letter indicating their wish to exercise the option but included no payment.  By March 1, 1975, the end of the first five years of the lease, Landlord received no payment from Tenant to extend the option.  The supreme court held Landlord was entitled to exact compliance with the terms of the option; and, therefore the fact Tenant gave notice prior to March 1 was completely irrelevant when the option required payment for its exercise.  Id. at 653-54, 230 S.E.2d at 718.  The court stated, there is simply no way to equate a requirement to pay money with the giving of notice.  Id.  
 
Conversely, in Conner v. Alvarez, the supreme court held written notice was sufficient to exercise an option.  285 S.C. 97, 105-106, 328 S.E.2d 334, 339 (1985).  Renter of house held an option to credit the first years rent towards the purchase price of the house, renewable at the end of the year and all subsequent years.  Id. at 98-99, 328 S.E.2d at 335.  The option provided for a re-appraisal at the time the Renter sought to exercise the option but was silent as to notice.  Id.  Renters attorney sent notice of intent to exercise the option on February 2, 1979, acknowledging the need to re-appraise the house.  Id. at 100, 328 S.E.2d at 335-36.  The supreme court held that the written notice was sufficient to exercise the option.  Id. at101-102, 328 S.E.2d at 336-37.
The supreme court clarified the seemingly contradictory case law in Ingram v. Kaseys Assocs., 340 S.C. 98, 531 S.E.2d 287 (2000).  In Ingram, Tenant entered into a ten year commercial lease for a restaurant. The lease contained a provision giving Tenant the right to purchase the property at any time during the lease term for a sum certain based on an amortization schedule.  Id. at 103, 531 S.E.2d at 289.  The ten year lease term would terminate on February 28, 1994.  In the fall of 1993, Tenant represented to Landlord that he would not be exercising his option, yet on February 22, 1994, Tenant provided written notice to Landlord that he intended to exercise his option to purchase the property.  Id. at 103, 531 S.E.2d at 289-90.  Landlord notified Tenant that Landlord relied on Tenants previous representation he would not exercise his option and further advised that the property had to be purchased on or before the close of business on February 28, 1994.  Id. at 103-104, 531 S.E.2d at 290.  Tenant never tendered any portion of the purchase price prior to the end of the lease, but rather sent a letter on March 8, 1994 indicating that he was ready, willing, and able to close on March 10, 1994.  Id.  Landlord responded he would not close and Tenant sued for specific performance.  The trial court denied specific performance and on appeal this court reversed the decision holding written notice of Tenants intent to exercise the option, without actual tender of the purchase price, was sufficient to fulfill the terms of the option contract.  Id. at 104, 531 S.E.2d at 290.  Landlord appealed.  The supreme court reversed finding that the written notice was insufficient to exercise the option.  Id. at 108, 531 S.E.2d at 292.  
 
Generally, when an option, by its express terms, requires the payment of the purchase money or a part thereof accompany the optionees election to exercise the option, the payment is a condition precedent.  77 Am. Jur. 2d Vendor and Purchaser § 48 (2000).  However, in Ingram this court awarded specific performance to the tenant based on the general rule of option contracts, or the Williston rule, which states: 
 

 Especially in cases of options for the sale of land, most courts interpret the option as conditioned upon the giving of a promise to pay the price for the land, that is, as calling for the formation of a bilateral contract rather than for tender of the actual performance, which would be required for acceptance in a unilateral contract.

Ingram v. Kaseys Assocs., 328 S.C. 399, 406, 493 S.E.2d 856, 860 (Ct. App. 1997) (quoting 1 Richard A. Lord, Williston on Contracts § 5:18, 738-739 (4th ed. 1990)).  Thus, this court found when tenant provided notice he bound himself to a bilateral and executory contract for the sale of land.  Id. at 407, 493 S.E.2d at 860.  
 
The supreme court did not discount such a general rule; rather the court rejected the notion that only one rule applies in all contexts, stating the Court of Appeals correctly cited the general rule for the exercise of an option contract.  However, this rule is not applicable to every circumstance.  Ingram, 340 S.C. at 109, 531 S.E.2d at 293.  Instead, the supreme court found, when the option contract does not explicitly require the payment of the purchase price as a condition, to determine if payment is necessary it is important to look at both the specific language used in the option contract and the context in which it was made.  Id.  It is in such a holding that the supreme court reconciles the previous South Carolina case law on option contracts.  Both Conner and Cotter were decided on a factual basis. 
 
The language used in the lease in Ingram did not explicitly require payment as a condition, but rather required payment at any time during the terms [of the lease].  Id. at 108, 531 S.E.2d at 292.  Thus, the supreme court looked to the context in which the contract was made and attempted to effectuate the intent of the parties.  The court found the use of a lease had practical significance to the landlord because of new zoning ordinances within the town.  Id. at 110, 531 S.E.2d at 293.  The restaurant could only operate at the leasehold site because it was grandfathered and risked losing such status if the restaurant failed to remain in operation.  Moreover, the court found that the landlord should not be forced to wait for tenant to exercise his option at some reasonable time and thereby cause a loss in business profits, potential leases and grandfathered status.  Id.  Thus, the supreme court found mere written notice of an intent to exercise was not sufficient to exercise the option.  Id. 
 
In the instant case, the Option does not explicitly require payment as a condition to the exercise of the Option.  The Option reads, in part: 
 

 22.16 Option to Purchase.  Subject to the condition precedent set forth below, [Owner] grants to [Purchaser], during the first and second renewal term [the] option to purchase . . . the Premises upon the following terms and conditions:
 
 (a) A purchase price of ONE MILLION SIX HUNDRED FIFTY THOUSAND AND NO/00 ($1,650,000.00).
 (b) The Option must be exercised in writing not later than ninety days prior to the end of the second renewal term and not earlier than ninety (90) days prior to the commencement of the first renewal term.  Failure to exercise the option shall cause it to automatically expire without further action by [Owner].
 (c) Upon the exercise of the Option, [Purchaser] shall deposit an earnest money deposit with [Owner] in an amount equal to FORTY-ONE THOUSAND TWO HUNDRED FIFTY AND NO/00 ($41,250.00) . . . .
 . . . .
 (d) Closing shall occur within ninety (90) days from the date of exercise of the Option.
 (e)     At Closing, TENANT shall deliver a general warranty deed free and clear of all encumberances, . . .
 
 
 As a condition precedent to the exercise of this Option, [Purchaser] must have consummated the purchase of [Sellers] business, pursuant to the terms and conditions of the [Agreement] . . . .

Subsection (b) states what is explicitly required to exercise the option.  Subsection (b) states, (1) how the option is to be exercised, exercised in writing; (2) when the option is to be exercised, not later than ninety days prior to the end of the second renewal term and not earlier than ninety (90) days prior to the commencement of the first renewal term; and, (3) what occurs if the option is not exercised, Failure to exercise the option shall cause it to automatically expire without further action by [Owner].  Subsection (c) states what is required once the option is exercised, Upon the exercise of the Option, [Purchaser] shall deposit an earnest money deposit with [Owner] in an amount equal to FORTY-ONE THOUSAND TWO HUNDRED FIFTY AND NO/00 ($41,250.00).  
 
Since it is not clear from the language of the Option that payment of the earnest money was a condition for the exercise of the Option, the court must look at both the specific language used in the Option and the context in which it was made.  The Option is arranged as a time-table, first requiring an exercise of the option, then a deposit of earnest money, and finally a closing.  Moreover, if Defendants intended the earnest money be paid on the date the Option was exercised Defendants knew how to make such a requirement.  In fact, Defendants made such a requirement in the Walkaway Option contained in the Addendum to the Agreement.  The Walkaway Option states: 
 

 30.  Walkaway Option.        Notwithstanding any other provision contained in this Agreement to the contrary, and subject to the conditions and procedures set forth below, the Seller grants to Purchaser a Walkaway Option upon the following terms and conditions: 
 
 
 (a)  The amount required to exercise the Walkaway Option shale be One Hundred Fifty Thousand and N0/00 Dollars ($150,000.00),
 which shall be paid in certified funds on the date the Walkaway Option is exercised. 
 
 

(Emphasis added).  Likewise, the September 5, 2001 letter from Defendants attorney suggests notice was all that was required to exercise the Option.  The letter reads, no notice has been received as to the exercise of the Option to Purchase. . . . Hence, the Option to Purchase, on its face, is extinguished.  
 
Furthermore, unlike the facts in Ingram, the Defendants did not risk such losses as business profits, potential leases and grandfathered status.  In this case, the lease term had not run, Purchaser was contractually bound to continue to pay rent and to purchase the business at the end of the year.  As for the condition precedent requiring Purchaser have consummated the purchase of [Sellers] business prior to the exercise of the Option, it is clear Purchaser had not purchased the business as of the date it exercised the Option.  Because we find Purchaser properly exercised the Option, but for the condition precedent, we address whether Purchaser was entitled to notice of default and a thirty day right to cure.  
 
B.  Notice of Default 
Purchaser argues if it were required to perform the condition precedent of closing on the business prior to exercising the Option, the court should have found that such failure to perform was subject to the default and right to cure provisions in the Sublease.  Defendants contend they had no duty to give notice of default and opportunity to cure because Purchasers failure to exercise the Option was not a default.  
 
When a contract is clear and unambiguous, the construction thereof is a question of law for the court.  Stribling v. Stribling, 369 S.C. 400, 404, 632 S.E.2d 291, 293 (Ct. App. 2006).  However, if a contract is ambiguous, or capable of more than one construction, the question of what the parties intended becomes one of fact.  Middleborough Horizl Prop. Regime Council of Co-Owners v. Montedison S.p.A., 320 S.C. 470, 477, 465 S.E.2d 765, 770 (Ct. App. 1995).
In construing a contract, the main concern of the court is to ascertain and give effect to the intention of the parties as determined by the contract language.  Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003).  When one construction of a contract makes the contract unusual or extraordinary, while another construction, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail.  Farr v. Duke Power Co., 265 S.C. 356, 362, 218 S.E.2d 431, 434 (1975).  All contracts should receive a sensible and reasonable construction, instead of a construction which will lead to absurd consequences or unjust results.  Walters v. Summey Bldg. Sys., Inc., 311 S.C. 507, 510-11, 429 S.E.2d 854, 856 (Ct. App. 1993).  Further, an interpretation which gives reasonable meaning to all contract provisions will be preferred to one which leaves a portion of the writing useless, meaningless or inexplicable.  17A Am. Jur. 2d Contracts § 377 (2004); see also 11 Williston on Contracts §32:5 (4th Ed.) (An interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable.) 
 
Reading the default provisions of the Sublease indicates a clear understanding that a failure of a condition precedent would be considered a default.  Paragraph 22.17 of the Sublease provides, in part[6]: 
 

 A material breach or a default, as well as a failure of condition precedent, with respect to the obligation by any party or its assigns and guarantors to perform under this Sublease shall be a breach or default under the Asset Acquisition Agreement [ ] and Personal Property Lease [ ].  A material breach or a default, as well as a failure of condition precedent, with respect by any party to perform under the Asset Acquisition Agreement or under the Personal Property Lease shall be a breach or a default under this Sublease.

The Sublease contains only two condition precedents.  The first condition precedent is found in Paragraph 2, Term, which provides, in part: 
 

 SUBTENANT shall have the ability to renew the Lease for two one (1) year renewal terms.  Provided, however, as a condition precedent to the option for either renewal term, SUBTENANT must also extend the Closing Date for the same period as the renewal term under the Asset Acquisition Agreement dated the 29th day of November, 1996    
 

The second condition precedent is found in Paragraph 22.16, Option to Purchase, which states, in part, [a]s a condition precedent to the exercise of this Option, SUBTENANT must have consummated the purchase of TENANTS business, pursuant to the terms and conditions of the Asset Acquisition Agreement.  
 
A failure of either condition precedent noted above is a default under the Sublease, as provided for under Paragraph 22.17 of the Sublease.  As provided in the Sublease, under Paragraph 16.1(f), Default: Default by SUBTENANT:

 Upon the occurrence of any one or more of the following events, , then there shall be an Event of Default: if SUBTENANT fails in the performance of any of the other covenants or conditions hereof and fails to cure such non-performance within thirty (30) days after the receipt of written notice from the TENANT specifying the non-performance.[7]  
 

Because we find Purchaser properly exercised the Option, but for the condition precedent of closing on the business, we hold the Defendants should have given Purchaser notice of default and the thirty day right to cure period provided under Paragraph 16.1(f) of the Sublease.  Therefore, we find specific performance was appropriate and remand to the trial court for an order enforcing the Option. 
 
II.  Attorney Fees 
In the event Purchaser won on appeal, Purchaser sought reversal of the trial judges award of attorneys fees to Defendants and requested this court to remand the issue to the trial court for a determination of appropriate attorneys fees to be awarded Purchaser.  
 
Defendants were granted $65,000.00 in attorneys fees pursuant to the provisions of the Agreement and Sublease.  Paragraph 9 of the Agreement reads, [i]n the event that litigation arises with respect to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney fees, court costs, and litigation expenses from the non-prevailing party or parties.  The Sublease contains the identical provision under Paragraph 22.18, but with the substitution of Sublease for Agreement.  
 
Because we reverse and remand for an order enforcing the Option, we find the Defendants are not the prevailing party and therefore, under the agreements are not entitled to attorneys fees.  Therefore, we reverse the award and remand for a determination of appropriate attorneys fees.
III.  Statute of Frauds
Lastly, Defendants argue, as an additional sustaining ground, Purchaser attempted to orally modify a contract without a writing in conformance with the Statute of Frauds.  This issue was raised but not ruled upon below, and we decline to address the issue.  See IOn v. Town of Mt. Pleasant, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding when reversing a lower courts decision it is within an appellate courts discretion as to whether to address any additional sustaining grounds); see also Gecy v. Bagwell, 372 S.C. 237, 243-44, 642 S.E.2d 569, 572 (2007) (declining to address an additional sustaining ground); and Vaught v. A.O. Hardee & Sons, Inc., 366 S.C. 475, 485, 623 S.E.2d 373, 378 (2005) (reversing the lower court and declining to discuss additional sustaining grounds). 
 
CONCLUSION
We find Purchaser properly exercised the Option, but for the condition precedent, and as such Defendants should have given Purchaser notice of default and the thirty day right to cure period contemplated within the agreements.  Therefore, we find specific performance was appropriate and remand to the trial court for an order enforcing the Option.  Accordingly, we also find Defendants are not the prevailing party and, therefore, reverse the award and remand for a determination of appropriate attorneys fees.  In light of our disposition, we need not address Purchasers remaining issues.  See Whiteside v. Cherokee County Sch. Dist. No. One, 311 S.C. 335, 340-41, 428 S.E.2d 886, 889 (1993) (appellate court need not address a remaining issue when resolution of prior issue is dispositive).
REVERSED AND REMANDED.
ANDERSON, HUFF, and WILLIAMS, JJ. concur.    

[1] The parties expressly evidenced their intent for all agreements to be construed as one comprehensive transaction in the Agreement, [t]he Exhibits and other documents referred to in this Agreement are an integral part of this Agreement.
[2] The parties later amended the Agreement to define the Date of Possession as December 16, 1996.  
 
[3] The Restated Lease provided for a one hundred and twenty month term commencing on December 1, 1996.  In addition, Purchaser had the right to renew the Restated Lease for one ten-year term.  
 
[4] In the event Purchaser had purchased the business, the Restated Lease also contained an option to purchase with similar terms to the Option in the Sublease.    
 
[5] Purchaser voluntarily dismissed its unfair trade practices claim and did not appeal the denial of quantum meruit relief.
[6] The Lease contains the exact language as the Sublease in Paragraph 19, Breach and/or Default, but with the substitution of Lease for Sublease and Sublease Agreement for Personal Property Lease. The Agreement also contains a similar provision in Paragraph 9, Default, which reads, in part, [t]he parties agree that a default and/or a failure of condition under this Agreement shall constitute an event of default and/or failure of condition under the Personal Property Lease, the Sublease Agreement and/or the Restated Lease, and vice versa.  
 
[7] The Lease and Agreement likewise contemplate a notice requirement in the event of default and a right to cure period for a failure of a condition precedent.  The Lease provides under Paragraph 10(f), Default by Lessee: 
 

 Upon the occurrence of any one or more of the following events, , then there shall be an Event of Default: if Lessee fails in the performance of any of the other covenants or conditions hereof and fails to cure such non-performance within thirty (30) days after the receipt of written notice from Lessor specifying the non-performance.

Under Paragraph 9, Default, of the Agreement, it reads: Should any party default in performance under this Agreement, then the non-defaulting party, after providing notice of default and a ten (10) day cure opportunity to cure said default, may seek all available remedies under South Carolina law.