THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Susan B.
 Covington, Alan R. Cochran, and Kathy H. Cochran, Respondents,
 
 
 

v.

 
 
 
 Alexander Karter
 and Alexandria Karter, as Trustees of the Karter Living Trust dated 4/17/00;
 Lamar F. Thompson; Vicki A. Thompson; Neil R. Blesi; Janet E. Blesi; Carl D.
 Fago; Susan E. Fago; and Gary Blesi, Defendants,
 Of whom
 Alexander Karter and Alexandria Karter, as Trustees of the Karter Living
 Trust dated 4/17/00; Neil R. Blesi; Janet E. Blesi; and Gary Blesi are the Appellants.
 
 
 

Appeal From Oconee County
 J. Cordell Maddox, Jr., Circuit Court
 Judge
Unpublished Opinion No. 2007-UP-539
Submitted November 11, 2007  Filed
 November 29, 2007
AFFIRMED AS MODIFIED

 
 
 
 Lowell W. Ross, of West Union, for Appellants.
 Eugene C. Covington, Jr., of Greenville, for Respondents.
 
 
 

PER CURIAM:  This
 is an action filed by Respondents Susan B. Covington, Alan R. Cochran, and
 Kathy H. Cochran, to determine the extent of their rights to use a road
 traversing several tracts of privately owned property.  Defendants Alexander and Alexandria Karter, as
 Trustees of the Karter Living Trust dated 4/17/00; and Neil R., Janet E., and Gary
 Blesi (collectively Appellants), all of whom were among the owners of the
 servient estates, appeal the trial courts finding that their properties were
 subject to an easement and the courts determination of the scope of the
 easement.  We affirm as modified.[1]
FACTS
On January 5, 1899, Wilt T. Meares
 purchased approximately 350 acres of land in Oconee County (the Meares
 Property).  On December 8, 1909, Meares deeded the northern portion of
 the land to his daughter, Ella Kestler (the Kestler Tract).  Appellants
 chain of title originates in the Kestler Tract.
The Kestler Tract was bounded by Oconee Station Road, a public
 road, now known as Biggerstaff Road.  Wilt resided on the remaining portion
 of the Meares Property, which was not bounded by any public road, and used a
 road known as Meares Drive, which ran through the Kestler Tract, for ingress
 and egress between his property and Oconee Station Road. 
In 1931,
 the portion of the Meares Property on which Wilt had been living was deeded to another
 of his daughters, Lena Cochran, who began residing in Wilts former home (the Cochran
 Tract).  In the late 1960s, Duke Power Energy Corporation purchased a
 significant portion of the Cochran Tract, in addition to other property, to
 create Lake Keowee.  Because Lenas home was located within the property sold
 to Duke Power, she built another home on the Cochran Tract.  Lenas grandson, Richard Meares, currently lives in the house she built.  Another grandson,
 Virgil Meares, lives on and owns another portion of the Cochran Tract.  The
 remainder of the Cochran Tract is now owned by Respondents and other Cochran
 relatives.  
As
 evidenced by witness testimony and public records, Meares Drive has existed in
 its present location for at least the past seventy-five years.  Previously, the
 road had drainage ditches on both sides; however, these have since washed out. 
 In the early 1980s, the Karters installed railroad ties and planted shrubbery
 on their property in the ditch lines, thus narrowing the width of the road;
 however, other parts of Meares Drive were at least twenty feet wide.  It
 appears undisputed that, but for Meares Drive, the Cochran tract, on which a
 church once stood, would be landlocked. 
On April 25, 2005, Respondents filed this
 action against Appellants and others asserting
 they were entitled to a twenty-foot-wide express easement, easement implied by
 prior use, easement by prescription, and easement by necessity.  The other
 defendants besides Appellants agreed to deed Respondents a twenty-foot-wide
 easement with rights of improvement over their respective lots. 
At trial, Appellants conceded the
 existence of an easement.  The trial court found Respondents had an
 easement based on the following grounds:  (1) by grant or reservation; (2)
 implied by necessity; (3) implied by pre-existing use; and (4) by prescription.
The trial court found the width of the easement to be twenty
 feet.  In support of this finding, the court noted the following:  (1) the road
 is twenty feet wide for over seventy-five percent of its length; (2)
 Appellants lots are not contiguous; therefore, the width of the road would
 change numerous times if the road were not of uniform width; (3) a twenty-foot-wide
 road would be sufficient to accommodate two-way traffic; (4) the width of Meares
 Drive has been at least twenty feet since the 1960s, with the only evidence of
 any narrowing being landscape timbers placed by the Karters in the ditch; and (5)
 there was testimony that at one point the road was wide enough to accommodate
 the transportation of a twenty-four-foot-wide mobile home. 
The trial court further found it was
 reasonable and necessary to the proper enjoyment of the easement that the surface
 of the road conform to that of other roads in the community.  In support
 of this finding, the trial court stated that [a]ll of the exhibits introduced
 indicated that paved roads are prevalent in this residential portion of the
 community.  The court also found it could take judicial notice that
 the reasonable standard for a vehicular road in the 21st Century is pavement
 rather than dirt.  As to any contention that paving the road would
 affect Appellants use of their properties, the trial court found the easement would
 still be used consistent with the purpose and character of the easement and
 granted Respondents reasonable and necessary improvement rights in the
 easement which shall include paving and grading.[2]  This appeal followed.
STANDARD OF REVIEW
The determination of whether an easement exists is a
 question of fact in a law case subject to an any evidence standard of
 review.  Slear v. Hanna, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998).  The determination of the scope
 of the easement, however, is a question in equity.  Hardy v. Aiken, 369
 S.C. 160, 165, 631 S.E.2d 539, 541 (2006).  
In an equity action,
 an appellate court has jurisdiction to find facts in accordance with its views
 of the preponderance of the evidence.  Grosshuesch v. Cramer, 367 S.C.
 1, 4, 623 S.E.2d 833, 834 (2005).  Thus, this Court may reverse a factual
 finding by the trial court when the appellant satisfies us the finding is
 against the greater weight of the evidence.  Campbell v. Carr,
 361 S.C. 258, 263, 603 S.E.2d 625, 627 (Ct. App. 2004).  Pursuant to Rule
 220(b), SCACR, when an appellate court chooses to find facts in accordance
 with its own view of the evidence, the court must state distinctly its findings
 of fact and the reason for its decision.  Dearybury v. Dearybury, 351
 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).
Moreover, the broad
 scope of review in an equity case does not require an appellate court to
 disregard the findings of the trial court.  Id.; Robinson v. Tyson,
 319 S.C. 360, 362-63, 461 S.E.2d 397, 399 (Ct. App. 1995).  Furthermore, an
 appellant is not relieved of the burden of convincing the appellate court that
 that the trial courts findings were in error.  Pinckney v. Warren, 344
 S.C. 382, 387-88, 544 S.E.2d 620, 623 (2001).
LAW/ANALYSIS
1. 
 Appellants first argue the trial court erred in finding Respondents are
 entitled to either a prescriptive easement or an easement by necessity.  We find
 no reversible error.[3]
In
 their brief, Appellants conceded the existence of an easement by prescription
 or necessity in the argument section of their brief.[4] 
 Moreover, they did not appeal the trial courts finding that Respondents have
 an express easement or an implied easement by prior use.[5]  A ruling not challenged on appeal is the law of the
 case, regardless of the correctness of the ruling.  S.C. Coastal
 Conservation League v. S.C. Dept of Health & Envtl. Control, 363 S.C.
 67, 76, 610 S.E.2d 482, 487 (2005).  Accordingly, the finding that
 Respondents had an easement by necessity over Appellants land, and
 alternatively an easement by grant, an easement implied by prior use, or an
 easement by prescription is the law of the case.  
In
 any event, we hold the evidence supports the trial courts finding that
 Respondents established their right to an easement by necessity over
 Appellants land.  Both the dominant and servient estates were acquired as a
 single tract by Wilt Meares, who subsequently deeded the Kestler tract to his
 daughter, and there appears to be no dispute that Meares Drive was the
 only way to access the property from the public street at the time of this
 conveyance and, for that matter, remains so today.  See Kennedy v.
 Bedenbaugh, 352 S.C. 56, 60, 572 S.E.2d 452, 454 (2002) (stating the legal
 requirements of an easement by necessity are unity of title, severance of
 title, and necessity).  
2.  Appellants
 next assert the trial court erred in finding Respondents could widen the
 easement to twenty feet.  We find no error.
Contrary to Appellants contention in their brief, the
 trial court did not permit Respondents to expand the width of Meares Road; rather, the court found the width of the easement to be twenty feet.  The
 record has evidence to support this finding. 
Virgil Meares testified that when he was preparing to move a mobile home onto his
 property, he measured Meares Drive  and determined the road was at least
 twenty feet wide from ditch to ditch.  In addition, Virgil testified that his
 father, who had also lived on the Cochran Tract, had routinely cleared the
 ditches that ran alongside Meares Drive to prevent water from draining over the
 road.  Virgil further estimated the road was from ditch to ditch . . .
 probably 22 feet.  He also stated that, since his fathers death, the ditches
 had been washed over with rain and as a result are filled in.  
Virgil
 also testified that the location where Meares Drive traverses his property and
 his brothers and sisters property, the road is twenty feet wide.  He believed
 that portion of the road was around one thousand feet in length.  He also
 noted that his information was based on a survey of his mothers property that
 he requested when he administered her estate. 
Based
 on this evidence, we uphold the trial courts finding that the width of the
 easement is twenty feet.  See Moore v. Reynolds, 285 S.C.
 574, 578, 330 S.E.2d 542, 545 (Ct. App. 1985) ([W]here a deed grants a
 right of way but does not fix its width, a determination of the width of the
 easement becomes a matter of construction of the instrument with strong
 consideration being given to what is reasonable, convenient and necessary to
 accomplish the purpose for which the right-of-way was created.); Marlow v. Marlow, 284 S.C. 155, 161, 325 S.E.2d 703, 707
 (Ct. App. 1984) (holding a twenty-foot-wide road was sufficient to accommodate
 two-way automobile traffic and enable the owner of the dominant estate to
 access her land); 12 S.C. Jur. Easements § 22 (1992) (There do not appear to be any South Carolina cases concerning the
 width of an easement by necessity, but presumably a court would look to what is
 reasonable and necessary.).[6] 
 
3.  Finally,
 Appellants argue the trial court erred in allowing Respondents to pave and
 grade Meares Drive.  Although we affirm the trial courts decision to allow
 Respondents to grade the road, we agree with Appellants challenge to the
 courts permission to pave it.
[T]he holder of an easement
 . . . is entitled to use the servient estate in a manner that is reasonably
 necessary for the convenient enjoyment of the servitude.  The manner,
 frequency, and intensity of the use may change over time to take advantage of
 developments in technology and to accommodate normal development of the
 dominant estate or enterprise benefited by the servitude.  Restatement
 (Third) of Property § 4.10 (2000).  
The
 trial court found Meares Road was initially a dirt road that descendants of
 Wilt Meares had maintained by grading and application of gravel.  Noting
 Respondents desired to improve the road for current day travel by paving it,
 the trial court found the request was reasonable and necessary to the proper
 enjoyment of the easement that the surface of the road conform[ ] to other road
 standards in the community.  The trial court supported its decision by taking
 judicial notice that paved roads, rather than dirt roads, are the present day
 norm.
We
 find this reasoning flawed for several reasons.  First, although the trial
 court may be correct that paved roads are more common than dirt roads, the road
 at issue here presently has a gravel surface.  More important, however, is the
 absence of any evidence that a graded gravel road has not provided Respondents
 convenient enjoyment of their right-of-way over Meares Drive.  Furthermore,
 the record is devoid of evidence suggesting the dominant estates have developed
 commercially or otherwise to the extent that vehicular traffic over a gravel
 surface has become unfeasible.  Indeed, as the trial court noted, Respondents
 own only 4.6 acres out of the 350-acre estate that Wilt Meares acquired in
 1899.
We therefore modify the trial courts ruling regarding
 improvement of the easement to hold that, although Respondents may continue to
 grade Meares Drive at their own expense, they may not pave the road.
4.  Finally,
 Appellants assert Respondents, as remote grantees, should not be allowed to
 expand the use of an easement of limited use to that of unlimited use.  We
 decline to address this argument.  The
 trial court did not rule on this issue, and Appellants did not move under Rule
 59(e), SCRCP, to address this omission; therefore, this issue is not preserved
 for our review.  See In
 re Michael H., 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) (An issue may not be raised for the first time on appeal.  In order
 to preserve an issue for appeal, it must be raised to and ruled upon by the
 trial court.); Lucas v. Rawl Family
 Ltd. Pship, 359 S.C. 505,
 510-11, 598 S.E.2d 712, 715 (2004) (It is well settled
 that, but for a very few exceptional circumstances, an appellate court cannot
 address an issue unless it was raised to and ruled upon by the trial court.).
AFFIRMED AS
 MODIFIED.
HEARN, C.J.,
 KITTREDGE and THOMAS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]  The trial court acknowledged that the Karters could
 complain that their landscape timbers could be dislodged by the improvement of
 the road, and, as a solution to this problem, ordered Respondents to take
 responsibility for replacing the trees and any other planted vegetation after
 paving the road.
[3]  Respondents assert numerous preservation
 concerns with Appellants brief.  Many of those concerns revolve around
 Respondents contention Appellants arguments are not listed in their statement of issues on appeal.  See State v. Dunbar, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) (No point will be considered which is not set forth in the
 statement of issues on appeal.) (citing Rule 208(b)(1)(B), SCACR).  In our view, Appellants arguments
 were all sufficiently contained in the issues on appeal.  Nevertheless, although
 Appellants listed the issue of the existence of an easement in their statement
 of issues on appeal, they failed to address it in the argument section of their
 brief; therefore, we decline to address it.  See Fields v.
 Melrose Ltd. Pship, 312 S.C. 102, 106,
 439 S.E.2d 283, 284 (Ct. App. 1993) (An issue raised on
 appeal but not argued in the brief is deemed abandoned and will not be
 considered by the appellate court.).  
[4]  Specifically, Appellants made the following
 statement in their brief:  It is admitted that the dirt road leading from
 Biggerstaff Road to the Meares home . . . existed either as a prescriptive
 easement or as an easement by necessity to the Meares property. 
[5]  We are aware of the apparent inconsistency within
 the appealed order concerning the findings by the trial court that Respondents
 had both a prescriptive easement and an easement by grant or reservation.  See 12 S.C. Jur. Easements § 10 (1992) (A prescriptive easement is
 analogous to adverse possession.  A prescriptive easement arises not from an
 express grant or reservation or by implication, but is established by conduct
 of the owner of the dominant tenement contrary to the fee simple interest of
 the owner of the servient tenement.).  We reconcile this
 apparent contradiction by noting the order concludes that Respondents are
 hereby granted an appurtenant easement by necessity or alternatively an
 easement by grant or reservation, implied by pre-existing use, or by
 prescription, in the road over [Appellants] property known as Meares Drive. (emphasis added).
 
[6]  Appellants also question the trial courts statement
 that There is testimony that the road at one point was wide enough to
 accommodate the transportation of a 24 foot wide trailer by Virgil Meares, noting
 the trailer came in two fourteen-foot sections.  Even if, as Appellants seem to
 contend, the evidence is suspect, we hold there is sufficient evidence
 otherwise to support the finding that the width of the easement is twenty feet.